IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of Heritage Community Bank, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 10-CV-7009<br>) |
| JOHN M. SAPHIR, *et al.*, | ) District Judge Rebecca R. Pallmeyer<br>) Magistrate Judge Young Kim |
| Defendants. | ) |

## MOTION BY WILLIAM HETLER, THOMAS JELINEK AND LORI MOSELEY TO DISMISS THE PLAINTIFF'S COMPLAINT

Defendants, WILLIAM HETLER, by his attorneys Matthew Tibble and Terence D. Brennan of PRETZEL & STOUFFER, CHARTERED, THOMAS JELINEK, by his attorney, Lawrence A. Stein of HUCK BOUMA PC, and LORI MOSELEY, by her attorney Anne Abrell of CASALE, WOODWARD & BULS, LLP move pursuant to rule 12(b)(6) and rule 12(f) of the Federal Rules of Civil Procedure to dismiss the plaintiff's complaint because it fails to state a claim upon which relief can be granted. In support of his motion, defendants state as follows:

1. On November 1, 2010, the FDIC filed a nine count complaint seeking to recover losses of the failure of Heritage Community Bank ("Heritage" or the "Bank") allegedly caused by 11 former officers and directors, including Loan Committee members William Hetler, Thomas Jelinek and Lori Mosely (the "Loan Committee Defendants"). Among the defendants are the Bank's chief executive officer, its chief

1

financial officer, and its senior vice president, and two vice presidents. As the name would indicate, the Loan Committee Defendants served only on the loan committee and did not hold managerial roles at Heritage. Counts IV, V and VI are against the Loan Committee Defendants and seek to state claims for gross negligence, negligence, and breach of fiduciary duty, respectively. Of course, the elements of each of these claims are duty, breach of duty, proximate cause, and damages.

### Either Count V or VI Must Be Dismissed As A Redundant Pleading

2. As an initial matter, either Count V or Count VI should be stricken. Federal Rule 12(f) allows the court to strike redundant pleadings. (RTC v. Platt, No. 92-cv-277-wds, 1992 U.S. Dist. LEXIS 21377, at *21-22 (S.D. Ill. Oct. 23, 1992). Consequently, courts will dismiss counts that are based on the same operative facts, and allege the same defendant breached the same standard of care. (*Id.* (Striking the RTC's negligence count because its duty requirement was a function of the defendants' duty under another count – breach of fiduciary duty); *see Wojitas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2006) (The negligence claim was "nothing more than a reiteration of the fiduciary duty claim"). In this case, the FDIC's claims against the defendants are virtually identical. For example, they each allege the defendants' duties consisted of the same three responsibilities: (1) enforcing prudent loan policies; (2) making informed decisions about the loans they approved; and (3) ensuring loans approved by the loan committee were properly monitored. (Cmplt. ¶¶ 76, 82). The complaint also alleges those duties were breached in the same two ways: (1) "permitting operation and continuation of the CRE Lending Program in an unsafe and

unsound manner, despite evidence of its failure;" and (2) approving "loans with underwriting weaknesses and/or without sufficient financial information to assess borrower credit worthiness." (Cmplt. ¶¶ 77-78, 83-84). Given that both counts plead the same duty and the same theory of recovery, defendants are entitled to have one of them dismissed.

## Standard Of Review

3. A Rule 12(b)(6) motion to dismiss challenges the legal sufficiency of a complaint on its face. Under Federal Rule 8, Plaintiff must provide "'a short and plain statement of the claim showing that [it] is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed R. Civ. Pro. 8. Previously, "the accepted rule" had been that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 561. In *Twombly*, the Supreme Court disavowed this interpretation. *Twombly*, 550 U.S. at 563 ("The ['no set of facts'] phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."). Now, to survive a motion to dismiss, the plaintiff's allegations must "raise a right to relief above the speculative level" and must "contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." (*Bell Atlantic Corp. v. Twombley* (2006), 550 U.S. 544, 550 (citing 5 C. Wright and A. Miller,

Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004).) Put another way, the complaint must contain "enough facts" to show that the claim "plausible on its face." (*Id.* at 570.) If the pleaded facts do not permit the inference of more than a "mere possibility of misconduct," then the complaint has not met the pleading standard outlined in Rule 8(a)(2). *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-1950 (2009); see also *Brown v. JP Morgan Chase Bank*, 2009 WL 1761101, *1 (7th Cir. June 23, 2009)(defining "facially plausible" claim as a set of facts that allows for a reasonable inference of liability).

### The Complaint's Allegations Do Not Lead To Plausible Claims For Any Of The Three Counts Against Hetler, Jelinek or Mosely

4. "Determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 129 S. Ct. at 1950; See *Twombly*, 550 U.S. at 557; *Brooks v. Ross*, 578 F.3d 574, 581(7th Cir. 2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 129 S. Ct. at 1951; See *Twombly*, 550 U.S. at 557; *Brooks*, 578 F.3d at 581-582. When dismissing complaints under the *Twombly* pleading regime, the Supreme Court and the 7th Circuit have focused on this concept that the complaint was "merely consistent with" the defendant's liability. *Twombly*, 550 U.S. at 553-554; *Iqbal*, 129 S. Ct. at 1951; *Brooks*, 578 F.3d at 581-582; *EEOC v. Concentra*, 496 F.3d 773, 777(7th Cir. 2007) (Dismissing complaint where allegations of a sexual affair were "logically consistent with the possibility that the affair was caused by quid-pro-quo sexual harassment, but it does not *suggest* that possibility any more than money

4

changing hands suggests robbery").

5. In *Twombly*, Plaintiffs, a class of telephone service subscribers, sued a group of local telephone service providers under §1 of the Sherman Anti-Trust Act for conspiring to prevent competitors from entering the telephone service industry. *Twombly*, 550 U.S. at 550-551. To state a claim under §1, Plaintiffs had to demonstrate Defendants had an agreement or engaged in a conspiracy to restrain trade. *Id.* at 553-554. The complaint made two core allegations: (1) that Defendants had engaged in parallel conduct intended to restrict the growth of new competitors; and (2) that Defendants agreed not to compete against each other, as evidence by their failure to pursue attractive business opportunities in each other's markets. *Id.* at 550-551. The Supreme Court dismissed the complaint, stating that while Defendants' behavior might be "admissible circumstantial evidence from which a [conspiracy] can be inferred," it was just as much in line with a wide swath of rational, competitive business strategy." *Id.* at 553-554.

6. In *Iqbal*, Plaintiff, an Pakistani Muslim living the United States, filed a §1983 suit, alleging several federal law enforcement officials detained him for racially discriminatory reasons following the September 11 Terrorist Attacks. *Iqbal*, 129 S. Ct. at 1942. To state a claim, Plaintiff had to show discriminatory intent - that Defendants' imprisoned men of Arab-descent because of, rather than in spite of, their ethnic background. *Id.* at 1948-1949. The complaint alleged that, in the days following September 11th, the FBI "arrested and detained thousands of Arab Muslim men" and that the FBI Director and the Attorney General had discussions where they "cleared"

this policy. *Id.* at 1943. Again, the Supreme Court dismissed the complaint, noting that Plaintiffs allegations were consistent with discriminatory intent, but "given more likely explanations, they do not plausibly establish this purpose." *Id.* at 1951.

7. In *Brooks*, Plaintiffs sued Illinois state officials for maliciously prosecuting them in retaliation for appearing before a parole board on a prisoner's behalf. *Brooks*, 578 F.3d at 577 The complaint alleged that the defendants wrote reports and gave interviews that established the basis for Plaintiffs malicious prosecution. *Id.* at 581. The 7th Circuit dismissed, noting that, like *Twombly*, Defendants' alleged behavior was "just as consistent with lawful conduct as it is with wrongdoing." *Id.* at 581-582.

8. In this case, the FDIC's allegations suffer from the same problem - if true, they establish only that Defendants' actions were consistent with gross negligence, negligence or breach of fiduciary duty. But the allegations are just as consistent with innocent conduct. While the FDIC attributes certain behavior to the Loan Committee Defendants, it does not explain why that behavior deviated from the standard of care on any of its causes of action. In other words, the Complaint fails to differentiate defendant's behavior from that of prudent bank officers who were not negligent and did not breach any fiduciary duty. Without such facts, the alleged behavior of these three loan committee members is "consistent with lawful conduct."

9. For example, the FDIC alleges flaws in the bank's loan origination. (Cmplt ¶¶ 24-32).These include credit analysis by the loan officers themselves, failure to "separate loan administration from loan origination," issuing loans with high loan-to-value ratios ("LTV ratios") on several loans and issuing "collateral dependent" loans.

(Cmplt ¶¶ 24-32). At no point, does the complaint explain why these flaws indicate negligence. For instance, the complaint notes that the bank issued loans with LTV ratios above the bank's 80% guideline. But it does not explain why an LTV ratio over that threshold is dangerous or provide an LTV ratio that would be prudent. Again, these allegations are equally consistent with both innocent conduct and malfeasance.

10. The FDIC also criticizes Heritage for continuing its CRE program beyond 2006, the point at which the Complaint alleges, in conclusory fashion, "the Chicago-area real estate market was in decline." (Cmplt ¶ 39). Namely, the FDIC observes that Heritage continued lending despite its Uniform Bank Performance Report ("UBRP") placing it "in the bottom 3% to 4% of its peer group with respect to net losses for construction and land development loans." (Cmplt ¶ 39). The Complaint does not demonstrate why the "the bottom 3% to 4% of its peer group" was cause for concern. If the real estate market were doing well, the entire peer group (bottom and top) may have been on stable footing. And if the peer group were small or the difference between the banks minimal, the bottom 3% to 4% may not be significant. Again, there is nothing in the complaint to indicate that continuing to lend in the face of the UBPR report was wrongful.

11. The FDIC also alleges that the Loan Committee Defendants were employed by the bank, after which the bank failed due to loan losses. (Cmplt ¶ 5). All banks have employees, and all banks suffer loan losses. But these are not necessarily indications of negligence by particular loan officers. The loans may have been sound when they were originated or renewed but resulted in losses due to unforeseen events.

Further, the complaint does not allege each defendant's role in these loan losses. (Cmplt. ¶¶ 40-42). It only states that the Loan Committee Defendants were negligent by "voting to approve one or more" of the identified loans. (Cmplt. ¶78). It does not identify which defendant (if any) originated or voted for which loan, or what role those actions played in the bank's eventual failure. It is not the case that every loan loss, even a string of expensive loan losses, is evidence of negligence. Nor is it the case that every bank employee is liable for every loan loss. Given that the allegations of the complaint could be made against every officer of every bank at any given time, the complaint fails to rise above the level of speculation and suspicion. See *Brooks*, 578 F.3d at 580 (Noting that the plaintiff "often uses this vague phrasing, which does not adequately connect specific defendants to illegal acts.").

12. There are no exhibits to the complaint, even though it refers to numerous documents, such as the appointment of the plaintiff as receiver, reports, loan write ups, appraisals, letters, and regulatory criticism. The plaintiff omits to file under seal or otherwise any such basic documents as the bank's charter, its by-laws, the minutes of the proceedings of the board and any committees, any allegedly loan applications, or loan documents. These are precisely the documents necessary to raise the claims against the defendant above the level of speculation or suspicion.

13. These flaws demonstrate that the FDIC's claims merely create a suspicion of a claim, and therefore are speculative and implausible on their face. Consequently, the all three counts against the Loan Committee Defendants should be dismissed for failing to state a claim.

## The Complaint's Allegations Fail to Meet the Basic Elements of Each Claim

14. It is clear that the FDIC has not properly alleged all the elements of all three causes of action: duty, breach of duty, proximate cause and damages.

15. **Duty.** In paragraph 11, the FDIC claims that the Loan Committee Defendants were unspecified "officers" of the bank and members of the loan committee. (Cmplt ¶ 11). The plaintiff never directly claims that these defendants were directors of the bank. Yet, the plaintiff claims in paragraph 69 that the defendants were directors "and/or" officers, without specifying which. (Cmplt ¶ 69). Similarly, the plaintiff's complaint, in paragraph 71, alleges that the source of the defendants' duty arises out of his position as a director "and/or" some unspecified officer. (Cmplt ¶ 71).

16. From these unspecified relationships with the bank, the Loan Committee Defendants are alleged generally to have a duty to use reasonable care, skill, and diligence in the performance of his unstated duties as an unspecified officer of the bank. (Cmplt ¶¶ 70, 76, 82). But no facts are alleged to support this alleged duty. Under these circumstances, at best the complaint merely encourages speculation and suspicion.

17. Under Illinois law, the business and affairs of the Bank are to "be managed by its board of directors . . . ." (205 ILCS 5/16.). Seen in this context, the complaint must be considered speculative, suspicious, and implausible, unless and until the plaintiff alleges enough facts to indicate that the Loan Committee Defendants had any responsibilities for the management of the Bank.

18. The Complaint fails to allege any facts tending to establish when the

9

Bank's board appointed the defendants into any particular position held by each of the Loan Committee Defendants officer or what duties their positions entailed. In fact, the FDIC has not even alleged Tom Jelinek had a position at all. The plaintiff also fails to allege whether the loan committee was a committee of the board or whether and to what extent the board delegated any of its duties to manage the bank to the loan committee.

19. In the absence of more factual specification of the source and details of the Loan Committee Defendants' alleged duties, the plaintiff has failed to allege sufficient facts to state a claim for negligence.

20. **Breach.** Of course, in failing to properly allege any duties, the plaintiff has also failed to properly allege any breach of those unspecific duties.

21. **Proximate Cause.** Nor has the plaintiff properly alleged proximate cause. The Complaint inexplicably omits such basic facts such as whether the Loan Committee Defendants as an unspecified officer was responsible for any particular loan, whether any particular loan failed to meet the applicable law, the bank's loan policy, or sound lending practices. Moreover, the Complaint fails to allege whether any of the Loan Committee Defendants were present at any meeting of the loan committee where any particular loan was presented, whether these defendants voted to approve or disapprove any such proposed loan, and whether any such vote would have affected the outcome of the proceedings of the committee.

22. Under these circumstances, the plaintiff has failed to properly allege proximate cause.

23. **Damages.** Similarly, the complaint fails to properly allege damages. Rather that specifying its losses as the date of the filing of the complaint, the plaintiff in paragraph 40, only lists the alleged "worst" loans, itemizing losses only "as of" March 31, 2010, seven months before the filing of the complaint, and alleging these damages are "ongoing." (Cmplt ¶¶ 40). The plaintiff alleges too generally that "these loans highlight "by way of example" the alleged losses. (Cmplt ¶ 40). At any given time, every bank will have loan losses, so that the listing of some such losses cannot at any given point in time fails to rise above the speculative level or allege anything more than suspicion. The plaintiff fails to allege sufficient facts of damages to rise above the level of speculation and suspicion. The allegations of damages are implausible.

24. Of course, the Loan Committee Defendants are not alleged to be owners of the Bank, so none of the allegations regarding dividends apply to him. Moreover, the complaint fails to specify whether the defendant received any improper incentive compensation or the amount of any such improper incentive compensation.

25. Under these circumstances, the plaintiff has failed to allege damages with sufficient specificity.

## Conclusion

26. The Loan Committee Defendants join in the motion of Mr. Saphir to dismiss to the extent that his motion confines itself to the four corners of the complaint. This motion seeks dismissal based only on the four corners of the complaint. If, however, the court takes notice of the bank's bylaws as submitted by Mr. Saphir, then the court may wish to note that the defendant is also entitled to the benefit of article 39

of the Illinois Banking Act and article X of the Bank's bylaws, by virtue of article IV of the bylaws of the Bank regarding committees of the board of directors which provides: "To the extent specified by the board of directors . . . each committee may exercise all of the authority of the board of directors in the management of the bank." Moreover, Illinois law specifies that persons "performing functions similar to those of a member of the board of directors" can be encompassed within the definition of a member of the board of directors. (205 ILCS 5/2.) Thus, if the defendant acted as a member of the loan committee as alleged in the complaint, he was acting as a member of the board of directors of the Bank and is not liable to for mere negligence.

WHEREFORE, defendant, WILLIAM HETLER, THOMAS JELINEK, and LORI MOSELY request an order dismissing the plaintiff's complaint for failing to state a claim, and for all other relief deemed appropriate under the circumstances.

    Respectfully submitted

    HUCK BOUMA PC

    /s/ Lawrence A. Stein
    Lawrence A. Stein

    PRETZEL & STOUFFER, CHARTERED

    /s/ Terence D. Brennan
    Terence D. Brennan

    CASALE, WOODWARD & BULS, LLP

    /s/ Anne M. Abrell
    Anne M. Abrell

Lawrence A. Stein
**HUCK BOUMA PC**
1755 South Naperville Road
Wheaton, Illinois 60189
Telephone (630) 221-1755
Facsimile (630) 221-1756
Electronic mail
    lstein@huckbouma.com


Matthew Tibble
Terence D. Brennan
**PRETZEL & STOUFFER, CHARTERED**
1 South Wacker Drive
Suite 2500
Chicago, IL 60601
Telephone (312) 346-1973
Facsimile (312) 346-8242
Electronic mail:
mtibble@pretzel-stouffer.com
tbrennan@pretzel-stouffer.com

Anne M. Abrell
**CASALE, WOODWARD & BULS, LLP**
9223 Broadway, Suite A
Merrillville, Indiana 46410
Telephone (219) 736-9990
Facsimile   (219) 736-9991
Electronic mail:
aabrell@cwblawfirm.com

## CERTIFICATE OF FILING AND SERVICE

I, Terence D. Brennan, state as follows under penalty of perjury this twenty-fourth day of January 2011:

1. I filed this *Motion by William Hetler, Thomas Jelinek and Lori Moseley to Dismiss the Plaintiff's Complaint* by filing it with the clerk of the court by electronic means.

2. I served this *Motion by William Hetler, Thomas Jelinek and Lori Moseley to Dismiss the Plaintiff's Complaint* by filing it with the clerk of the court by electronic means, which electronic filing constitutes service by virtue of local rule 5.9.

3. I made the electronic filing on January 24, 2011.

*Attorneys for Plaintiff*
Susan Valentine
Robert S. Michaels
Megan O'Malley Chessare
Robinson Curley & Clayton P.C.
300 S. Wacker Drive, Suite 1700
Chicago, IL 60606
Tel.: 312-663-3100
Fax: 312-663-0303
svalentine@robinsoncurley.com
rmichaels@robinsoncurley.com
mchessare@robinsoncurley.com

Leonard J. DePasquale
Federal Deposit Insurance Corporatioin
3501 N. Fairfax Drive, VS-E-7016
Arlington, VA 22226
Tel.: 703-562-2063

*Attorneys for John M. Saphir*
John M. George
Katten & Temple LLC
542 S. Dearborn St. #1060
Chicago, IL 60603
jgeorge@kattentemple.com


*Attorneys for Jerry C. Brucer*
William D. Dallas
Regas, Frezados, Harp & Dallas
111 W. Washington St., Suite 1525
Chicago IL 60602
wdd@rfd-law.com

*Attorneys for James K. Champion*
Catherine J. Spector
Steven Ross Gilford
Proskauer Rose LLP (70W)
70 W. Madison, Suite 3800
Chicago, IL 60602-4342
cspector@proskauer.com
sgilford@proskauer.com

/s/ Terence D. Brennan
Terence D. Brennan,
IL Bar No. 6289123
Attorneys for Defendant
Pretzel & Stouffer, Chartered
One S. Wacker Drive, Suite 2500
Chicago, Illinois 60606
Telephone: (312) 346-1973
Fax: (312) 346-8242
Email: tbrennan@pretzel-stouffer.com