IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Federal Deposit Insurance Corporation, as Receiver for Heritage Bank,<br><br>Plaintiff,<br><br>v.<br><br>John M. Saphir, Patrick G. Fanning, Stephen L. Faydash, William E. Hetler, Thomas Jelinek, Lori A. Moseley, Stephen Anthony, Jerry C. Brucer, James K. Champion, Andrew B. Nathan, And Mary C. Mills,<br><br>Defendant. | Case No. 10-CV-7009<br><br>Honorable Judge Rebecca Pallmeyer |

**DEFENDANT JERRY C. BRUCER'S MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Jerry C. Brucer (herein "Mr. Brucer"), by his attorneys, Regas, Frezados and Dallas LLP, submits the following memorandum in support of his motion to dismiss the complaint of the Plaintiff, Federal Deposit Insurance Corporation as Receiver for Heritage Bank (herein "FDIC"):

**INTRODUCTION**

In the wake of the recent financial crisis over 300 banks have collapsed. This total includes small community banks and large national banks, like Wachovia and Washington Mutual. An additional 860 banks are on the FDIC's troubled bank list. This list does not include numerous overseas banks, such as Northern Rock in the U.K., and non-bank financial institutions, such as Lehman

1

Brothers and Bear Stearns, that were also casualties of the international economic collapse, nor does it include those "too-big-to-fail" banks, such as Citibank and Bank of America that were bailed out by the Troubled Asset Relief Program.

Mr. Brucer and the other Defendants in this actions were the directors of Heritage Community Bank (herein the "Bank"), one of the numerous banks and financial institutions to fail under the pressures of this global financial collapse. The FDIC, as receiver for the Bank, now attempts to charges the officers and directors of the Bank with knowledge of an impending real estate collapse and to bring claims against them for their management and supervision of the Bank and its commercial real estate lending program (herein "CRE program"). The FDIC argues that, despite their honest efforts, the officers and directors of the Bank should bear liability for failing to preserve the Bank in the midst of the worst international recession since the Great Depression. This manner of second guessing is beyond the purview of the law, which makes clear that a director making informed decisions in good faith will not have his judgment questioned by those with the benefit of hindsight.

The FDIC makes three claims against Mr. Brucer and the other directors, but the allegations and elements of each claim are materially identical. The first two claims are for negligence under Section 1821 (k) of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (herein "FIRREA"), 12 U.S.C. § 1821(k), and negligence under Illinois law. The third claim is for breach of fiduciary duty. These claims are all materially identical. The complaint as a

2

whole should be dismissed because it attempts to hold directors liable for honest errors in judgment and for that reason it is clearly barred by the business judgment rule.

## STATEMENT OF FACTS

Heritage Bank was founded in 1969 and it operated as a state-chartered, FDIC-insured community bank with its headquarters in Glenwood Illinois. Complaint, ¶ 21. In the early 2000's, the Bank expanded its lending to include commercial real estate (herein "CRE"), which was particularly profitable at the time. Complaint, ¶ 21. Heritage Bank's CRE program returned considerable profits and generally exceeded the performance of its peers for nearly half a decade; a period unacknowledged by the FDIC in its complaint. Since the inception of the CRE program, the officers and directors of the Bank have made honest and diligent efforts to implement controls to manage risk, address the concerns of regulators, and identify problems in its CRE portfolio.

Heritage employed a three-tiered process to evaluate proposed CRE projects. Initially, credit analysts prepared loan write-ups summarizing the proposed loan and analyzing the creditworthiness of the borrowers and guarantors, as well as the project's feasibility. Complaint, ¶ 24. After a credit analyst prepared a loan write-up, the loan was sent to the Loan Committee who conducted an additional review and write up before determining whether to approve the loan. Complaint, ¶ 24. If approved by the Loan Committee, the loan write-up was sent to the Board of Directors for a further review and final approval. Complaint, ¶ 24.

3

The Bank was subject to continual regulatory oversight since its inception in 1969 and the inception of the commercial real estate lending program in the early 2000's. The Bank received no criticism of its practices until the middle of 2006, when economic conditions threatened the nation's financial institutions as a whole. Complaint, ¶ 38. The Bank's directors responded to this criticism with a letter dated January 4, 2007 setting forth the controls in the Bank's underwriting and loan monitoring functions which justified its approach to managing the risk in its portfolio. Complaint, ¶ 30.

When the Bank began to experience financial problems, it took measures to identify weaknesses in its CRE loan portfolio. Initially it hired a shareholder of its holding company to conduct a review of newly originated loans. Complaint, ¶ 35. In 2008, it took further measures by commissioning an independent loan review to provide professional insight and critical analyses of its entire loan portfolio. Complaint, ¶ 35.

Unfortunately, these efforts were overcome by the economic pressures exerted by the collapse of the commercial real estate market, the United States economy, and the global economy at large. Heritage Bank was placed into receivership on February 27, 2009. Complaint, ¶ 5.

## LEGAL STANDARDS FOR A MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a pleading. A complaint is insufficient if it fails to allege factual matters which could plausibly state a claim for relief. A court should accept all well pleaded facts in a complaint. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322

(2007). However, this tenet is inapplicable to legal conclusions. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). A pleader must do more than merely incant labels, conclusions, and the formulaic elements of a cause of action. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The court will not accept as true bald assertions, conclusions, or inferences masquerading as facts. *Ashcroft*, 129 S.Ct. at 1949-50. The complaint must provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Conley v. Gibson*, 355 U.S. 41, 47 (1957)(overruled by *Bell Atlantic v. Twombly*, 550 U.S 544 (2007), which heightened the pleading standard). Furthermore, the plaintiff must allege enough facts to raise their claims beyond the level of speculation and demonstrate that their claims are not just conceivable, but plausible. *Twombly*, 550 U.S. at 570. Where the well-pleaded facts do not demonstrate anything more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief and must be dismissed. *Ashcroft*, 129 S.Ct. at 1950.

## ARGUMENT

The FDIC's complaint is insufficient at law to impose liability on Defendants. First, it will be demonstrated that all FDIC's claims are legally and factually identical. Next it will be demonstrated that the FDIC's complaint wholly fails to set forth facts establishing negligence and its claims are barred by the business judgment rule.

## I. The FDIC's claims against Mr. Brucer may be treated as one because they allege identical duties, facts and damages

There is no legal or factual distinction among the three claims presented by the FDIC (negligence under FIRREA, negligence under Illinois law, and breach of fiduciary duty) and therefore the legal insufficiencies discussed in the second section of this argument warrant the dismissal of all claims.

A negligence claim under FIRREA is governed by applicable state law and is therefore identical to an Illinois negligence claim, except that a FIRREA claim requires the plaintiff to prove the higher burden of gross negligence.[1] *Atherton v. F.D.I.C.*, 519 U.S. 213, 218 (1997). Additionally, the Illinois Supreme Court has held that where a claim for breach of fiduciary duty and negligence rely on the same set of operative facts and allege the same injury the claim for breach of fiduciary duty is redundant and should be dismissed. *Neade v. Portes*, 193 Ill.2d 433, 443 (2000). Illinois courts do not distinguish between the fiduciary duty of care owed by a director and the negligence requirement that a director exercise reasonable care, thus claims for a breach of this duty may be considered together. *See Stamp v. Touche Ross & Co.*, 263 Ill.App.3d 1010, 1016 (1st Dist. 1993). There are no legal grounds for distinguishing the FDIC's claims

Furthermore, the FDIC's complaint alleges the same duties, facts and injuries in Count I, for negligence under FIRREA; Count II, for negligence under Illinois law; and Count III, for breach of fiduciary duty. These Counts essentially

---

[1] The Illinois Banking Act, 205 ILCS 5/39(b)(1), permits a bank to limit the liability of directors for derivative and shareholder claims to a gross negligence standard and Article X of the Bank's Bylaws elect to make such a limitation. Therefore, a gross negligence standard applies under Illinois law, but for the purposes of this motion it will be assumed that the standard is ordinary negligence as the Bank's Bylaws are not incorporated in the Complaint

repeat the same language verbatim. Therefore, there is no factual basis for distinguishing these claims. For these reasons, the legal insufficiencies described below apply to all three counts.

## II. The FDIC's claims should be dismissed because Illinois does not permit a plaintiff to question the informed decisions of a director

The crux of the FDIC's complaint is that Mr. Brucer and the other directors of Heritage Bank made unreasonable decisions in their management of the Bank and in doing so breached their duties to the Bank. This premise is insufficient to state a cause of action because under applicable Illinois law the decisions of directors are removed from scrutiny by the business judgment rule.

Directors will not be held liable for honest errors in judgment provided they exercise due care in their management of corporate affairs. *Stamp v. Touche Ross & Co.*, 263 Ill.App.3d 1010, 1015 (1st Dist. 1993). The fiduciary duty of care a director owes to the entity he manages and the negligence principle requiring a director to exercise due care are equivalent and well defined: directors have a duty to attend and to participate in regular board meetings and a duty to inform themselves of the material facts necessary to exercise their judgment. *Id.* If a director complies with these duties, the business judgment rule creates a shield from liability from honest errors in judgment and the complaining party's judgment shall not be substituted for that of the directors. *Lower v. Lanark Mut. Fire Ins. Co.*, 114 Ill.App.3d 462, 467 (2nd Dist. 1983). Under the business judgment rule it is presumed that the director's decisions are formed in good faith and designed to promote the best interests of the entity they serve. *Schlensky v. Wrigley*, 95 Ill.App.2d 173, 178 (1st Dist. 1968). The

reasonableness of the decisions may not be judicially questioned. *See Id.* at 181 (stating, "we do not mean to say that we have decided the decision of the directors was a correct one. That is beyond our jurisdiction and ability."). The presumptions of the business judgment rule may only be rebutted by allegations of bad faith, fraud or illegality. *Id.*

In *Stamp v. Touche Ross & Co.*, 263 Ill.App.3d 1010 (1st Dist. 1993), the liquidator of Pine Top Insurance Company brought suit against the directors of Pine Top for negligence and breach of fiduciary duty after the company became insolvent. *Stamp*, 263 Ill.App.3d at 1012. The plaintiffs in that case specifically alleged that the defendant directors breached their duties in that they:

(a) Failed to develop and implement adequate underwriting procedures and controls;
(b) Consistently underpriced reinsurance and insurance business written by Pine Top;
(c) Failed to develop and implement adequate procedures and controls with respect to establishing reserves;
(d) Failed to increase reserves when loss experience demonstrated the inadequacy of reserves;
(e) Failed to set appropriate reserve liabilities for incurred but not reported claims;
(f) Understated the reserves that were necessary to satisfy claims and claims administration expenses in Pine Top's Annual Statements for the years ending December 31, 1981, 1982, 1983, 1984, and 1985;
(g) Failed to plan for or control a large premium growth, both through lack of management controls and inadequate staffing;
(h) Paid excessive commissions to managing general agents;
(i) Failed to oversee the performance of managing general agents and to monitor the quality of underwriting performed on Pine Top's behalf by such agents or the quality of reinsurance placed on Pine Top's behalf;
(j) Failed to develop and implement adequate procedures for the collection of balances due from managing general agents;
(k) Failed to require managing general agents to maintain adequate books and records;

(*l*) Failed to place Pine Top's ceded reinsurance book of business with financially secure reinsurers;

(m) Failed to develop and implement adequate procedures for the collection of balances due from reinsurers;

(n) Failed timely to draw down on letters of credit posted by reinsurers on Pine Top's behalf;

(o) Abdicated or wrongfully delegated to Pine Top's parent corporations (Greyhound and Whitney) the management responsibilities of Pine Top and its subsidiaries Pine Top Services and Pine Top Syndicate;

(p) Failed to properly manage and supervise the affairs of Pine Top's subsidiaries, Pine Top Services and Pine Top Syndicate;

(q) Failed to keep correct and accurate books and records of accounts for Pine Top in violation of [215 ILCS 5/133];

(r) Failed to report accurately the foregoing acts, omissions and circumstances to the Illinois Department, as required by [215 ILCS 5/1 *et seq.*, and particularly 215 ILCS 5/133, 134, and 136];

(s) Failed to accurately disclose Pine Top's true financial condition in its Annual Statements, as required by [215 ILCS 5/136].

*Id.* at 1012-1013. The court rejected all of these allegations and upheld dismissal of the plaintiff's complaint because it did not to allege that the defendants made uninformed decisions or otherwise failed use due care in reaching their decisions. *Id.* at 1017. The plaintiffs also failed to allege that the defendants' decisions involved fraud, illegality, or bad faith. *Id.* The court summarized the deficiencies as follows: "plaintiff's complaint questions those decisions which defendants made. This is exactly the type of second-guessing which the business judgment rule was designed to preclude." *Id.*

In this case, the FDIC commits the same error as the plaintiffs in *Stamp*; its negligence allegations attempt to second guess the business judgment of Mr. Brucer and directors of the Bank. The FDIC fails to allege lack of informed judgment, fraud, illegality or bad faith on the part of Mr. Brucer and therefore all claims are barred by the business judgment rule.

9

Plaintiffs first allege that Mr. Brucer was negligent in failing to supervise management in the design, implementation, and operation of the CRE lending program. Complaint, ¶¶ 55-56. Specifically, in ¶ 55 they identify five failures relating to the design, implementation, and operation of the CRE lending program. The first three of these failures are virtually identical to the allegations rejected as insufficient in *Stamp* and the remaining two allegations are also insufficient according to *Stamp*. Each of the five allegations in ¶ 55 will be discussed in turn.

First, the FDIC alleges that Mr. Brucer failed to establish and enforce lending policies, including limits on CRE concentrations and limits on speculative and/or high-LTV CRE projects. Complaint, ¶ 55. This allegation is equivalent to the allegation in *Stamp* that the defendant failed to develop and implement adequate underwriting procedures and controls. Second, the FDIC alleges that Mr. Brucer failed to establish sufficient reserves for loan losses and to maintain adequate capital consistent with the risk inherent in the CRE Lending Program. Complaint, ¶ 55. This allegation is equivalent to the allegations in *Stamp* that the defendants failed to develop and implement adequate procedures and controls with respect to establishing reserves and that defendants failed to increase reserves when loss experience demonstrated the inadequacy of reserves. Third, the FDIC alleges that Mr. Brucer failed to ensure that the Bank had sufficient, capable personnel to undertake and administer the CRE Lending Program. Complaint, ¶ 55. This allegation is equivalent to the allegation in *Stamp* that the defendant failed to plan for or control a large premium growth, both through lack

10

of management controls and inadequate staffing. In *Stamp*, the court recognized that all the allegations referenced above attacked the business decisions of the directors rather than the directors' compliance with their duty of care. Accordingly, the court held that all these allegations failed to state a claim for negligence. The allegations in this case are identical and are legally insufficient to state a cause of action for the reasons just described.

In the fourth allegation of ¶ 55, the FDIC alleges that Mr. Brucer failed to comply with regulatory standards regarding its CRE Lending Program. Complaint, ¶ 55. The FDIC admits that the Bank conducted appraisals, but then asserts that these appraisals were deficient or did not support the feasibility of the projects. Complaint, ¶ 31. The FDIC provides no facts supporting these conclusions and thereby fails to provide Mr. Brucer with the notice that he is due under *Twombly*. Furthermore, these conclusions attack the business decisions of Mr. Brucer and the directors of Heritage Bank. The FDIC alleges that the facts possessed by the directors did not support their decisions; they do not allege that the Mr. Brucer and the Heritage directors failed to inform themselves. Therefore these allegations are not actionable under the business judgment rule, even if the FDIC's conclusions are accepted as true. The FDIC also states in its fourth allegation that the Bank received repeated regulatory criticism for non-compliance with regulatory standards relating to appraisals. Compliant, ¶ 55. However, in *Stamp* the plaintiffs did not just allege a failure to comply with regulatory guidelines but a failure to properly document accounts in violation of Illinois law. The *Stamp* court found those allegations insufficient to constitute a

11

breach of a director's duty of care. For the same reasons relied upon in *Stamp*, the FDIC's allegations are insufficient to state a cause of action.

In the fifth and final allegation of ¶ 55, the FDIC alleges that Mr. Brucer failed to correct deficiencies identified in Reports of Examination performed by state and federal bank examiners. Complaint, ¶ 55. The FDIC's complaint admits that the guidelines were supervisory and that any lack of compliance was a business judgment on the part of the directors. Complaint, ¶ 30. The Complaint states, "Defendant Saphir wrote a letter to the Illinois Department of Financial and Professional Regulation . . . . Saphir's letter suggested that the limitation on high-LTV loans to 100% of total Bank capital was merely "guidance," not a binding limit, and that Heritage had sufficient controls in its underwriting and loan monitoring functions to properly manage risk in its portfolio." Complaint, ¶ 30. Whether or not the controls were in fact sufficient is irrelevant; the FDIC's complaint alleges that the directors were informed of the risks and made an erroneous decision. Directors cannot not be held liable for honest errors in judgment absent a failure to properly inform themselves of the appropriate facts. These allegations are plainly insufficient.

The FDIC next alleges in ¶¶ 57-58 that Mr. Brucer was negligent in approving CRE loans because he *knew* about various facts associated with these loans which made them too risky to approve. Complaint ¶¶ 57-58. These allegations are clearly insufficient. The FDIC must allege that the directors failed to properly inform themselves of material facts prior to a decision in order to escape the bar of the business judgment rule. The FDIC alleges the exact

12

opposite. It alleges that the directors *were* informed. Under the business judgment rule, this allegation is insufficient to state a cause of action.

Finally, the FDIC alleges in ¶ 59 that Mr. Brucer was negligent in approving $11.075 million in dividends to the Bank's holding company and in incentives to senior management. Complaint, ¶ 59. Like every previous allegation, this allegation attempts to question an informed director's business decision. The FDIC alleges that the dividends and incentives were improper because the directors should have instead increased loan loss reserves and Bank capital. The allegation is equivalent to the allegation in *Stamp* that directors paid excessive commissions to managing general agents. That allegation was deemed insufficient in *Stamp* and for the same reasons that allegation is insufficient to state a cause of action here.

The FDIC has failed to comprehend the nature of a directors duty of due care and to plead the facts necessary to demonstrate a breach of that duty. The FDIC further fails to allege any fraud, illegality or bad faith. As a result, their complaint is wholly deficient as a matter of law and should be dismissed with prejudice.

Regas, Frezados & Dallas LLP


By: /s William D. Dallas
One of the attorneys for Jerry C. Brucer

William D. Dallas   (6186780)
Steven M. Dallas   (6303138)
Regas, Frezados & Dallas LLP
111 W. Washington Street, Suite 1525
Chicago, IL 60602
(312) 236-4400