## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

|  |  |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of Heritage Community Bank,<br><br>Plaintiff,<br><br>v.<br><br>JOHN M. SAPHIR; PATRICK G. FANNING; STEPHEN L. FAYDASH; WILLIAM E. HETLER; THOMAS JELINEK; LORI A. MOSELEY; STEPHEN ANTHONY; JERRY C. BRUCER; JAMES K. CHAMPION; ANDREW B. NATHAN; and MARY C. MILLS,<br><br>Defendants. | Case No. 10-cv-07009<br><br>Judge Rebecca R. Pallmeyer<br><br>Magistrate Judge Arlander Keys |

## <u>JOINT MEMORANDUM IN SUPPORT OF JOINT MOTION TO DISMISS COMPLAINT</u>

Aaron H. Stanton (IL Bar No. 6244251)
Burke, Warren, MacKay & Serritella, P.C.
330 N. Wabash
22nd Floor
Chicago, IL 60611
Telephone:  (312) 840-7078
Facsimile:  (312) 840-7900

*Counsel for Defendant Stephen Anthony*

Sigal P. Mandelker (*pro hac vice*)
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036
Telephone:  (212) 969-3360
Facsimile:  (212) 969-2900

*- and -*

Steven R. Gilford (IL Bar No. 3121730)
Catherine J. Spector (IL Bar No. 6287459)
Proskauer Rose LLP
Three First National Plaza
70 W. Madison St., Ste. 3800
Chicago, IL 60606
Telephone:  (312) 962-3550
Facsimile:  (312) 962-3551

*Counsel for Defendant James K. Champion*

# **TABLE OF CONTENTS**

Introduction .................................................................................................................. 1

Argument..................................................................................................................... 3

   I.   Legal Standard. ................................................................................................. 3

   II.   The FDIC is Barred Under Illinois Law From Alleging Negligence or Breach of
Fiduciary Duty Against Outside Directors Champion and Anthony............................. 4

   III.   The FDIC Has Not Adequately Pleaded Claims Against Champion and
Anthony But Rather Improperly Grouped All Eleven Defendants Together. ................ 4

   IV.   The Complaint Fails To Allege Sufficient Facts To Rebut The Business
Judgment Rule Or To Plead Gross Negligence. .......................................................... 8

      A.   The FDIC Fails To Allege Oversight Failure Against Outside Directors
Champion and Anthony............................................................................................. 9

      B.   The FDIC Fails To Allege That Approval Of Loans That Subsequently
Defaulted Was Negligent or Breached a Fiduciary Duty. ....................................... 11

      C.   The FDIC Fails To Allege That The Approval of Dividends and Incentive
Payments Was Negligent or Breached a Fiduciary Duty........................................ 15

   V.   The Complaint Fails to Allege That The Conduct Of Outside Directors Champion
And Anthony Proximately Caused Injury To The Bank. ............................................. 19

Conclusion ................................................................................................................ 20

# TABLE OF AUTHORITIES

## CASES

*Appeal of Spering,* 71 Pa. 11, 1872 WL 11430 (Pa. 1872)…………………………......... 13

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)……………………………………… 3,4

*Belmont Holdings Corp. v. SunTrust Banks, Inc.,* 2010 WL 3545389 (N.D. Ga. Sept. 10, 2010)………………………………………………………………………………….. 13

*Cement-Lock v. Gas Tech. Inst.,* 2005 U.S. Dist. LEXIS 22058 (N.D. Ill. Sept. 30, 2005)………………………………………………………………………………………. 3

*Cement-Lock v. Gas Tech. Inst.,* 523 F. Supp. 2d 827 (N.D. Ill.2007)………………….. 9

*E.E.O.C. v. Concentra Health Servs., Inc.,* 496 F.3d 773 (7th Cir. 2007)…………......... 4

*FDIC v. Castetter,* 184 F.3d 1040 (9th Cir. 1999)…………………………………………… 8, 9

*FDIC v. Gravee,* 966 F. Supp. 622 (N.D. Ill. 1997)…………………………………………… 3

*FDIC v. Stahl,* 854 F. Supp. 1565 (S.D. Fla. 1994)…………………………………………. 13

*First Nat'l Bank of Lincolnwood v. Keller,* 318 F. Supp. 339 (N.D. Ill. 1970)…………… 12

*HA2003 Liquidating Trust v. Credit Suisse Sec. (USA) LLC,* 517 F.3d 454 (7th Cir. 2008)………………………………………………………………………………………….. 13

*Hoefeller v. General Candy Corp.,* 275 Ill.App. 89, 1934 WL 2848 (1st Dist. 1934)…………………………………………………………………………………………. 17

*In re Abbott Labs. Derivative S'Holders Litig.,* 325 F.3d 795 (7th Cir. 2003)…………… 12

*In re Caremark Int'l,* 698 A.2d 959 (Del. 1996)……………………………………...…… 9

*In Re ITT Corporation Derivative Lit.,* 588 F. Supp. 2d 502 (S.D.N.Y. 2008)…………… 6

*In Re ITT Corporation Derivative Lit.,* 653 F. Supp. 2d 453 (S.D.N.Y. 2009)…………… 6

*Int'l Ins. Co. v. Johns*, 874 F.2d 1447 (11th Cir. 1989)…………………….…………… 16, 17

*Kenilworth Partners, L.P. v. Cendant Corp.,* 59 F.Supp.2d 417 (D. N.J. 1999)………… 6

*King v. Baldino,* 648 F. Supp. 2d 609 (D. Del. 2009)……………………………………… 10

*Lewis v. CITGO Petroleum Corp.,* 561 F.3d 698 (7th Cir. 2009)………………………….. 2,3

*McRoberts v. Spaulding,* 32 F.2d 315 (S.D. Ia. 1929)……………………………………... 13

*Murphy v. Candor,* 263 Ill.App. 226, 1931 WL 3142 (2d Dist. 1931)………..…………… 4,14

*Noonan v. Harrington,* 09 CV 3191, 2010 WL 3785785 (C.D. Ill. Sept. 16, 2010)……… 18

*Northern Trust Co. v. Peters,* 69 F.3d 123 (7th Cir. 1995)………………………………… 19

*Oakland Cnty. Emps. Ret. Sys. v. Massaro,* No. 09 CV 6284, 2010 U.S. Dist. LEXIS 92648 (N.D. Ill. Sept. 7, 2010)………………………………………………………….... 16

*Ohlendorf v. Rathje,* 230 Ill.App. 427 (2d Dist.1923)……………………………………… 5,7,12

*Resolution Trust Corp. v. Acton,* 844 F. Supp. 307 (N.D. Tex. 1994)…………………… 6

*Resolution Trust Corp. v. Blasdell,* 154 F.R.D. 675 (D. Az. 1993)……………………….. 6

*Seidel v. Byron,* 405 B.R. 277 (N.D. Ill. 2009)…………………………………………… 8

*Sherman v. Ryan,* 392 Ill. App. 3d 712(1st Dist. 2009)…………………………………… 8,9,10

*Stamp v. Touche Ross & Co.,* 263 Ill. App. 2d 1010 (1st Dist. 1993)…………………… 8

*Starrels v. First Nat'l Bank of Chicago,* 870 F.2d 1168 (7th Cir. 1989)………………….. 8,13

*Wallach v. Billings,* 227 Ill. 218 (1917) ………………………………………………… 8,12,19

*Warner v. Penoyer,* 91 Fed. Rep. 587 (2d Cir. 1898)……………………………..……... 8

*Washington Bancorporation v. Said,* 812 F. Supp. 1256 (D.D.C. 1993)………………… 5,12,13

*Wheeler v. Aiken County Loan & Saving Bank,* 75 F. 781 (D.S.C. 1896)……………….. 13

*Young v. Bryco Arms,* 213 Ill. 2d 433 (2004)……………………………………………... 19, 20

*Zahl v. Krupa,* 399 Ill. App. 3d 993 (2d Dist.2010)……………………………..………… 20

## STATUTES AND RULES

12 U.S.C. § 1821(k)………………………………………………………………………… 3

205 ILCS § 5/39……………………………………………………………………….…….. 4

805 ILCS 5-9.10………………………………………………………………………..…….. 18

FED. R. CIV. P. 8.…..…………………………………………………………………………. 3

Defendants James K. Champion and Stephen Anthony (together, "Champion and Anthony') jointly submit this Memorandum In Support of their Motion to Dismiss the Complaint (the "Motion").[1]

## INTRODUCTION

The FDIC brings this action as the receiver for Heritage Community Bank (the "Bank"), one of 329 banks nationwide, and 38 banks in Illinois, that failed since 2008, during the current real estate meltdown. Unlike many of the horror stories in the press about failed banks involving fraudulent conduct, conflicts of interest, and billions of dollars in losses, this is a case about a small suburban bank that for over 40 years lent money to individuals and small businesses, including, like just about every other bank, construction loans in the booming real estate market of 2000 to 2008. Unfortunately, when the real estate bubble burst, the Bank suffered losses. However, unlike many sophisticated financial institutions that also invested heavily in real estate but were considered too big to fail, the Bank never had the opportunity for rescue by the government through a bailout. Instead, the FDIC seeks to recover the Bank's losses from **all** of the Bank's 11 officers and directors, including two outside directors, Champion and Anthony.

As detailed below, in contrast to the inside directors, who were Bank officers, the outside directors were not Bank employees or officers. Instead, particularly with small local banks such as Heritage, outside directors are typically businesspersons asked to serve as directors because of their reputation and familiarity with local customs and

---

[1]    The instant Motion to Dismiss is brought concurrently with Defendant John M. Saphir's Motion to Dismiss the FDIC's Complaint and Memorandum in Support (Docket Nos. 61 & 69, "Saphir's Motion to Dismiss"). Champion and Anthony join and incorporate by reference the relevant portions of Saphir's Motion to Dismiss: (a) the Factual Background; (b) Section I of the Argument; (c) Section II of the Argument; and (d) Section III of the Argument.

practices. Because outside directors are presumed to have less knowledge about Bank operations, the FDIC has stated that they should be held to a lesser degree of duty than inside directors. (*See, e.g.,* FDIC "Statement Concerning the Responsibilities of Bank Directors and Officers," http://www.fdic.gov/regulations/laws/rules/5000-3300.html.) Outside directors are legally permitted to rely reasonably upon the bank's officers in making decisions without exposure to liability for decisions that "in hindsight" are deemed wrong. If outside directors were held to the same standard as inside directors, banks would be unable to obtain competent outside directors, who serve a very important function and are integral to the functioning of our financial system.

Altogether ignoring the practical and legal distinctions between outside and inside directors, the FDIC asserts three counts against the "Director Defendants," which includes the Bank's two inside directors, as well as the five outside directors: (1) a violation of the Financial Institutions Reform Recovery and Enforcement Act of 1989 ("FIRREA") for gross negligence (Count I); (2) simple negligence (Count II); and (3) breach of fiduciary duty (Count III). The FDIC bases these three counts on the same three categories of allegations. One, all 11 Defendants allegedly failed to properly oversee Heritage's commercial real estate ("CRE") program. (Compl. ¶¶ 22-38.) Two, the Director Defendants allegedly improperly approved CRE-related loans. (*Id.* at ¶¶ 39-42.) Three, the Director Defendants allegedly approved purportedly excessive dividend payments and incentive awards. (*Id.* at ¶¶ 43-46.)

To sustain its three counts against Champion and Anthony, the FDIC must allege that: (1) they owed the Bank a duty; (2) they breached this duty; and (3) the breach proximately caused injury to the Bank. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698,

702 (7th Cir. 2009) (negligence); *Cement-Lock v. Gas Tech. Inst.*, No. 05 CV 2712, 2005 U.S. Dist. LEXIS 22058 (N.D. Ill. Sept. 30, 2005) (breach of fiduciary duty). Under FIRREA (Count I), the FDIC must also allege that Champion and Anthony's actions constituted "gross negligence." 12 U.S.C. § 1821(k). Illinois law, which controls under FIRREA, defines gross negligence as "very great negligence" but less than willful, wanton, and reckless conduct. *FDIC v. Gravee*, 966 F. Supp. 622, 636 (N.D. Ill. 1997).

This court should dismiss the counts against Champion and Anthony for four reasons. <u>One</u>, the Bank's directors are not subject to liability for negligence or breach of the duty of care under the Illinois Banking Act and the Bank's by-laws (Counts II and III). <u>Two</u>, the Complaint does not give Champion and Anthony fair notice of the very serious claims against them because the FDIC fails to make any specific allegations against them but instead generically groups them together with all 11 Defendants, including the inside directors and officers, who had greater knowledge and duties than Champion and Anthony. <u>Three</u>, under the law controlling the duties and liability of outside directors, the FDIC has not set forth sufficient facts to rebut the business judgment rule or to plead gross negligence. <u>Four</u>, the Complaint does not sufficiently allege that the decisions of Champion and Anthony proximately caused injury to the Bank.

**ARGUMENT**

I.     **Legal Standard.**

Rule 8 requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To satisfy the requirements of Rule 8 and survive a motion to dismiss under Rule 12(b)(6), the complaint must describe the claim in sufficient detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v.*

3

*Twombly,* 550 U.S. 544, 555 (2007). Furthermore, the allegations in the complaint "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007).

## II.     The FDIC is Barred Under Illinois Law From Alleging Negligence or Breach of Fiduciary Duty Against Outside Directors Champion and Anthony.

Counts II and III (negligence and breach of fiduciary duty) fail as a matter of law. Bank "directors are not liable for slight negligence" under Illinois common law. *Murphy v. Candor*, 263 Ill.App. 226, at *3 (2d Dist. 1931). The Illinois Banking Act formally established this limiting principle of Illinois law by allowing Illinois-chartered banks to preclude directors' personal liability for breach of fiduciary duty claims that do not involve gross negligence, breach of the duty of loyalty, intentional misconduct, or conflict of interest.  205 ILCS § 5/39.

As set forth in Section I of Saphir's Memorandum, incorporated by reference herein, Article X of the Bank's by-laws provide that "[t]o the fullest extent permitted by the Illinois Banking Act. . . a director of this Bank shall not be liable to the Bank or its stockholders for monetary damages for breach of fiduciary duty as a director."  Thus, because Counts II and III (negligence and breach of fiduciary duty) do not allege breach of the duty of loyalty, intentional misconduct or conflict of interest against Champion and Anthony, these counts fail as a matter of law and must be dismissed.

## III.     The FDIC Has Not Adequately Pleaded Claims Against Champion and Anthony But Rather Improperly Grouped All Eleven Defendants Together.

The court should dismiss Counts I, II, and III against Champion and Anthony because the Complaint does not contain any specific allegations with respect to either of them, including whether they voted in favor of any decision of the Board of Directors

now questioned by the FDIC.   Instead, the FDIC groups together all 11 "Defendants,"
which includes the Bank's two officers and inside directors and five outside directors, as
a single entity, or refers to all seven directors as "Director Defendants," without
distinguishing between the outside directors and inside directors.   (Compl. ¶ 48
(defining the "Director Defendants"); *see also* ¶¶ 49-67 (asserting causes of action
against "Director Defendants" as a unit).)   The Complaint, by treating the defendants as
a single unit, violates Rule 8, because it fails to give Champion and Anthony fair notice
of the very serious claims against them.

Outside directors are presumed to have less knowledge than inside directors.
(*See* FDIC "Statement Concerning the Responsibilities of Bank Directors and Officers,"
http://www.fdic.gov/regulations/laws/rules/5000-3300.html ("An inside director generally
has greater knowledge of and direct day-to-day responsibility for the management of the
institution"); 52 FR 22682-03, 1987 WL 136298 ("outside directors cannot normally be
expected to directly establish an adequate system of internal controls, they are
responsible to ensure that one is put in place and that it is operating satisfactorily."))
There is a presumption, therefore, that outside bank directors owe banks lesser duties
than inside bank directors and officers.   *See Washington Bancorporation v. Said*, 812 F.
Supp. 1256, 1266 (D.D.C. 1993) ("directors of a bank must satisfy different standards of
care depending on the circumstances under which they operate during any given act").
Thus, Illinois courts have separated bank director defendants into "classes" based on
their position with the bank and knowledge.   *See Ohlendorf v. Rathje*, 230 Ill.App. 427,
at *5-11 (2d Dist. 1923) ("[i]n determining liability of the directors in this case we must
examine [the bank directors] conduct in reference to the discharge of their duties").   In

*Ohlendorf*, the court divided the defendants into "five classes" based on their positions in the bank and what they knew and when and what they should have known based on what is "customary." *Id.*

Moreover, a complaint that fails to distinguish among classes of directors with different levels of knowledge and involvement in a bank's operations presents grounds for dismissal where, as here, it fails to give directors fair notice of the claims against them. *See Resolution Trust Corp. v. Acton*, 844 F. Supp. 307, 315 (N.D. Tex. 1994) (the "RTC's pleadings . . . do not materially differentiate between interested and disinterested directors"); *Resolution Trust Corp. v. Blasdell*, 154 F.R.D. 675, 690, n.14 (D. Az. 1993) (in action against directors of failed savings and loan, the court required the RTC to "identify" the individual directors' involvement in each transaction); *see also In re ITT Corporation Derivative Lit.*, 588 F. Supp. 2d 502, 510-11 (S.D.N.Y. 2008) (for purposes of a derivative action, "whether the Directors face a substantial likelihood of liability must be determined on a director-by-director basis, and thus Plaintiffs' conflation of all the directors into a single entity is insufficient under Rule 23.1").[2]

Here, despite the advantage of pre-suit discovery, including document productions pursuant to FDIC subpoenas and depositions of seven Defendants, the Complaint fails to distinguish among the Defendants. Instead, the FDIC treats all seven directors (both inside and outside directors) the same, labeling them the "Director Defendants." Yet the allegations of the Complaint make clear that Defendants Saphir

---

[2]     *See also In re ITT Corporation Derivative Lit.*, 653 F. Supp. 2d 453, 464 (S.D.N.Y. 2009) (pleading "Director Defendants" as "a single entity" is not sufficient because "[n]either an awareness of facts nor a conscious disregard of oversight of duties can be inferred from a director's service"); *Kennilworth Partners L.P. v. Cendant Corp.*, 59 F. Supp. 2d 417, 428 (D. N.J. 1999) (securities fraud complaint against "directors" failed to sufficiently allege scienter where it failed to allege specific knowledge by directors).

and Fanning, the Bank's inside directors, and the Bank's outside directors, in particular Champion and Anthony, had vastly different knowledge, control, and ownership with respect to the Bank. Defendant Saphir, in addition to being a board member, worked for the Bank for more than 40 years as its President, CEO, and Chairman of the Board of Directors; was a member of the Loan Committee; and controlled 30% of the Bank holding company's stock.[3] (Compl. ¶ 7.) Likewise, Defendant Fanning, in addition to being a board member, was Senior Vice President, Chief Lending Officer, and President of the Bank as well as the "primary originator" on the loans that the FDIC now complains about and "the Bank's top lending officer and administrator, overseeing all origination and credit functions." (*Id.* at ¶ 8.) Unlike Defendants Champion and Anthony, the FDIC alleges that the other three outside directors on the Board owned far more significant shares of the Bank's holding company, Heritage Community Bancorporation, Inc. ("HCBI") and that one served on the Bank's Loan Committee and another served as a director on the board of HCBI. (*See id.* at ¶¶ 14, 16-17.)

In contrast, Defendants Champion and Anthony did not serve in any of these capacities and, according to the Complaint, respectively owned only 1.285% and .489% of the Bank holding company. (Compl. ¶¶ 13, 15.) Their responsibilities and knowledge were substantially different from those of the inside directors and meaningfully different from those of the other outside directors, who served these additional functions. Champion and Anthony are familiar with local business practice, and, like all outside directors, were part of the board to help the Bank understand local business customs to help cement the Bank's relationships with local businesses. *See Ohlendorf*, 230 Ill.App. 427, at *13 (outside directors from the business community are necessary so that the

---

[3]      HCBI controlled the Bank through ownership of the Bank's stock.

local community bank can understand customs and habits of community, and such directors are "not required to be bookkeepers or skilled accountants").

Accordingly, because the allegations of the FDIC's Complaint fail to give fair notice of the claims against Champion and Anthony, the court should dismiss Counts I, II, and III against those defendants.

## IV.    The Complaint Fails To Allege Sufficient Facts To Rebut The Business Judgment Rule Or To Plead Gross Negligence.

The court should also dismiss the Complaint against Champion and Anthony because the FDIC fails to allege sufficient facts to rebut the business judgment rule and fails to plead that Champion and Anthony were negligent, grossly negligent or breached a duty to the Bank.  The business judgment rule presumes that Champion and Anthony acted in good faith and with due care as directors.  *Stamp v. Touche Ross & Co.*, 263 Ill.App.3d 1010, 1015, 636 N.E.2d 616 (1st Dist. 1993) ("absent allegations of 'bad faith, fraud, illegality or gross overreaching, courts are not at liberty to interfere with the exercise of business judgment by corporate directors.'").[4]

To overcome this principle and survive dismissal under Rule 12(b)(6), the FDIC must allege more than that the Bank failed and that Defendants caused this failure. *See Wallach v. Billings*, 277 Ill. 218, 115 N.E. 382 (Ill. 1917).  Even if the FDIC alleged that "there was a general supineness of looseness of management by the directors," this would not overcome the business judgment rule.  *See id.* (quoting *Warner v. Penoyer*, 91 F. 587, 593, 33 C.C.A. 222 (2d Cir. 1898)); *FDIC v. Castetter*, 184 F.3d 1040, 1045

---

[4]     *See also Starrels v. First Nat'l Bank of Chicago*, 870 F.2d 1168 (7th Cir. 1989); *Seidel v. Byron*, 405 B.R. 277, 290-91 (N.D. Ill. 2009) (in action by trustee against former officers and directors for breach of fiduciary duty, plaintiff must plead sufficient facts to avoid presumption of the business judgment rule or risk dismissal "based on the business judgment rule."); *Sherman v. Ryan*, 392 Ill.App.3d 712, 722, 911 N.E.2d 378 (1st Dist. 2009) (affirming motion to dismiss based on failure to allege sufficient allegations to rebut the business judgment rule).

(9th Cir. 1999) (affirming grant of summary judgment for bank directors where FDIC failed to allege facts required to rebut presumptions of business judgment rule).

Here, each of the FDIC's three categories of allegations—(A) oversight failure; (B) approval of loans that later went bad; and (C) ratification of certain compensation and dividends—fails to adequately plead that Champion and Anthony acted at all, much less acted negligently, were grossly negligent, or breached their fiduciary duties.  As a result, Counts I, II and III against Champion and Anthony fail.

**A.    The FDIC Fails To Allege Oversight Failure Against Outside Directors Champion and Anthony.**

The FDIC fails to allege sufficient facts to plead oversight failure against Champion and Anthony. Director oversight liability, under *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959 (Del. 1996), which this court adopted in *Cement-Lock v. Gas Tech. Inst.*, 523 F. Supp. 2d 827, 842 (N.D. Ill. 2007), "is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment."  *See Sherman v. Ryan*, 392 Ill.App.3d 712, 729, 911 N.E.2d 378 (1st Dist. 2009) (affirming motion to dismiss, the court held that the failure of a company's reporting system to catch "red flags" that would have alerted directors to complained-of conduct did not constitute "utter failure" needed to plead director oversight liability). Under *Caremark*, "the necessary conditions predicate for director oversight liability [are]: (a) the directors **utterly failed** to implement any reporting or information system or controls; *or* (b) having implemented such a system or controls**, consciously failed to monitor** or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." *Id.* (emphasis added).  "[T]o state a viable *Caremark* claim, and to predicate a substantial likelihood of director liability on it, a plaintiff must

plead the existence of facts suggesting that the board **_knew_** that internal controls were inadequate, that the inadequacies could leave room for illegal or material harmful behavior, and that the board chose to do nothing about the control deficiencies that it knew existed." _King v. Baldino_, 648 F. Supp. 2d 609, 621 (D. Del. 2009) (emphasis added) (granting Rule 12(b)(6) motion to dismiss).

Here, the FDIC alleges that the "Defendants failed to implement": (1) "the most basic controls to mitigate the inherent risks in CRE loans"; or (2) "an effective system to monitor CRE loans to determine if the projects continued to be feasible." (Compl. ¶¶ 23, 33.) In paragraphs 24-32 and 34-35, however, the FDIC, like the plaintiff in _Sherman_, 392 Ill.App.3d 712, alleges that the Bank had a control and monitoring system in place – it simply did not catch the impending problems. For example, the FDIC alleges that the bank employed credit analysts to draft "loan write-ups" and "loan grades" that went to the Loan Committee for approval. Only after the Loan Committee approved the loan based on the loan write-up and loan grade did the Board of Directors consider the loan based on the loan write-ups, loan grades, and the Loan Committee's prior approval. (_Id._ at ¶¶ 24-25.) The FDIC also alleges that the Bank had a system in place for monitoring loans "once made." (_Id._ at ¶ 26.)

As in _Sherman_, arguments that in "hindsight" (which as detailed below at pages 13-15, is not sufficient to impose liability on outside directors), may show that established system and controls in place did not work is not sufficient to allege the required "utter failure" needed to plead director oversight liability against Champion and Anthony. The FDIC also does not allege that Champion and Anthony "consciously" ignored warning signs before March 30, 2006 (the first Uniform Bank Performance Act

Report).   After this time, the Complaint alleges that the Director Defendants relied on Defendants Saphir (the Bank's CEO) and Faydash (the Bank's CFO) in approving and monitoring loans and assessing the Bank's then current system and controls.  (*Id.* at ¶¶ 30, 36, 39.)  Because the law permits outside directors to rely in good faith on the recommendations of bank officers (*see* below at page 15), these allegations likewise show that the Champion and Anthony did not consciously fail to monitor or oversee the Bank's operations after the alleged regulatory cautions.

Because the FDIC fails to allege sufficient facts to plead oversight failure against Champion and Anthony, these allegations do not support the counts against them (Counts I, II, and III), and each count must be stricken and dismissed.

### B.  The FDIC Fails To Allege That Approval Of Loans That Subsequently Defaulted Was Negligent or Breached a Fiduciary Duty.

The FDIC also fails to adequately plead that the alleged approval of certain loans by Champion and Anthony after December 1, 2006 constitutes negligence (let alone gross negligence) or a breach of fiduciary duty.   The FDIC predicates its negligent approval claims on its assertion that, by the end of 2006, the Defendants (including Champion and Anthony) should have stopped CRE lending because of the decline in the real estate market.  (Compl. ¶ 39.)

The approval of these CRE loans, however, does not sustain a claim for negligence against Champion and Anthony for two reasons.  One, the FDIC does not allege that Champion or Anthony voted to approve these loans—only that the Board approved them, which could have occurred even if certain directors voted against approval.  The Complaint thus does not sufficiently inform Champion and Anthony of the claims against them.  (*See supra* at Section III.)

Two, the FDIC fails to plead sufficient facts to allege that the approval of the loans in question fell outside the business judgment rule or that Champion and Anthony breached a duty or was negligent or grossly negligent in allegedly approving these loans that later defaulted. As detailed above at page 8, absent allegations of "bad faith, fraud, illegality or gross overreaching," if Champion and Anthony voted to approve the loans in questions based on "the product of a process that was either deliberately considered in good faith or was otherwise rational," the business judgment rule protects their exercise of judgment. S*ee also In re Abbott Labs. Derivative S'Holders Litig.*, 325 F.3d 795, 805 (7th Cir. 2003). Even if Champion and Anthony approved loans that did not meet the Bank's criteria, this fact alone does not constitute negligence as a matter of law. *See., e.g. First Nat'l Bank of Lincolnwood v. Keller*, 318 F. Supp. 339, 347-48, 11 A.L.R. Fed. 593 (N.D. Ill. 1970) (holding that the fact that a director approved loan "in violation of bank's internal rules and regulations . . . does not, without more, make a director and officer liable for the default of such loans"). Likewise, the fact that loans were not repaid, by itself, does not support a negligence claim. *Id.* Otherwise, bank directors would be sued "every time a loan proved uncollectable." *Id. See also Wallach*, 277 Ill. at 233 (bank directors "are not liable for every loss which happens to occur. Such a rule would make a bank director an insurer, which he is not.").

Moreover, Illinois law does not require outside directors to conduct an examination of the Bank's books and accounts; they are permitted to rely on documents prepared by the Bank and its officers and directors. *See Ohlendorf*, 230 Ill. App. 427 (2d Dist. 1923) (reversing judgment of negligence against outside directors with no knowledge or suspicion of fraud); *Said*, 812 F. Supp. at 1269 (holding that bank

12

directors "are entitled to rely on the advice of financial and legal advisors, provided they do not do so blindly").[5]

Importantly, directors' decision cannot be adjudged negligent based on hindsight. *See, e.g.*, *HA2003 Liquidating Trust v. Credit Suisse Sec. (USA) LLC*, 517 F.3d 454, 458 (7th Cir. 2008) ("Inability to see the future differs from 'gross negligence'"); *Starrels v. First Nat'l Bank*, 870 F.2d 1168, 1171 (7th Cir. 1989) (complaint failed to allege that conduct was not product of proper business judgment where, at most, the "allegations merely show with hindsight that these loans were a mistake"); *FDIC v. Stahl*, 854 F. Supp. 1565, 1568-69 (S.D. Fla. 1994) (must assess decisions of board at the time of the decision not in "hindsight" after it is clear that the decision was a mistake).[6]

"To impose liability on directors for [] good-faith business decisions," based on "hindsight," "would effectively destroy the corporate system in this country, for no individuals would serve as officers and directors," *Washington Bancorporation*, 812 F. Supp. at 1267-68, though, as the FDIC acknowledges, such service is necessary for a healthy banking system. (*See* http://www.fdic.gov/regulations/laws/rules/5000-3300.html

---

[5]    *See also Belmont Holdings Corp. v. SunTrust Banks, Inc.,* No. 09 CV 1185, 2010 WL 3545389 at *6 (N.D. Ga. Sept. 10, 2010) (holding that absent knowledge that directors "did not believe" the financial statements, the directors were not liable for negligence because the fact that the loan reserves in the financial statements later turned out to be insufficient due to "a later course of economic events," does not state a claim for negligence).

[6]    In lawsuits brought following financial crises dating back well over a century, courts refused to find directors liable for decisions that in "hindsight" were poor. *See McRoberts v. Spaulding*, 32 F.2d 315, 316-17 (S.D. Ia. 1929) (in "retrospection it is easy to criticize the actions of officers" of banks that failed as a result of large scale default of mortgages caused by drop in farm prices in depression but directors cannot be held liable for not anticipating what everyone else failed to anticipate); *Wheeler v. Aiken County Loan & Saving Bank*, 75 F. 781, 782-85 (D.S.C. 1896) (holding that directors were not liable for failing to anticipate financial crisis because "men of extraordinary prudence and financial foresight might have foreseen the end but directors at a small bank in a small town cannot be justly held to personal accountability."); *Appeal of Spering*, 71 Pa. 11, 1872 WL 11430, at *6 (Pa. 1872) (holding that bank directors' decision not to make loans during the "great panic, which the apprehension of trouble in the South brought about," although ultimately "mistaken," was reasonable at the time).

("Banks need to be able to attract and to retain experienced and conscientious directors").) *See also Murphy*, 263 Ill.App. 226, 1931 WL 3142, at *3 ("some consideration must be given to the view that directors of banks must not be held to a too high degree of care; otherwise responsible persons will not assume that position").

Here, the FDIC, as detailed above at page 10, alleges that the Bank had a process in place for the approval of the loans that the FDIC now contends in generalities was somehow deficient and constituted gross negligence: (1) credit analysts drafted "loan write-ups" and "loan grades" that went to the Loan Committee (on which neither Champion nor Anthony served) for approval; and (2) if approved by the Loan Committee, the Director Defendants considered the loan based on the loan write-ups, loan grades, and the Loan Committee's prior approval. (*Id.* at ¶¶ 24-25.) Because the FDIC has not alleged any conflict of interest or that the above process was fraudulent, Champion and Anthony's decisions in this system fall squarely within the business judgment rule. The fact that the process is now alleged to have had flaws, which the FDIC does not allege Champion and Anthony were aware of, does not alter the fact that their decisions were made in good faith and based on the information provided to them by the Bank and its Officers and Inside Directors.

In a flawed effort to avoid the business judgment rule, the FDIC alleges that the Director Defendants should have known that the Chicago-area real estate market was in decline and should have stopped CRE lending, aggressively worked out distressed loans, increased reserves, and strengthened the capital of the Bank. (Compl. ¶ 39.) Even if it now appears in hindsight that these loans were mistakes—which Defendants do not concede—this does not convert the Director Defendants' good faith decisions

into gross negligence.  If the Director Defendants made these decisions in a real estate "bubble," (*id.* at ¶ 21), at a time that "[t]he Chicago-area CRE market was . . . saturated" (*id.* at ¶ 51.A), that "bubble" and the CRE market saturation existed because, at that time, many banks and investors were making the very same type of loans that the FDIC now contends are grossly negligent.  In other words, the Complaint admits that, at the time the Bank approved the CRE loans at issue, other banks made similar loans.

Likewise, the FDIC's contention that the Director Defendants should not have approved loans after the Bank's "regulators criticized the Bank for exceeding supervisor LTV limits," does not sufficiently rebut the business judgment rule or allege gross negligence with respect to Champion and Anthony.  The FDIC alleges that Defendant Saphir (the Bank's CEO, President, and Chairman of the Board) told Champion and Anthony that the regulator's guidelines were "merely guidance, not a binding limit that [the Bank] had sufficient controls in its underwriting and loan monitoring functions to properly manage risk in its loan portfolio."  (Compl. ¶ 30.)  In deciding to approve the now contested loans, the Director Defendants had the right to rely upon Defendant Saphir's statements and cannot be held accountable for doing so.

Accordingly, this court should hold that the FDIC has not sufficiently alleged that the approval of the loans in question by Champion and Anthony constituted negligence, let alone gross negligence, or a breach of fiduciary duty, and therefore, these allegations do not support the counts against them (Counts I, II, and III).

### C.    The FDIC Fails To Allege That The Approval of Dividends and Incentive Payments Was Negligent or Breached a Fiduciary Duty.

The FDIC also fails to allege sufficient facts to show that the Director Defendants' approval of certain dividends and incentive payments, which the FDIC alleges were

approved based on the advice of Defendant Faydash, the Bank's CFO, and the Bank's financial statements, (Compl. ¶¶ 43-44), was negligent. <u>First</u>, the FDIC never identifies: (1) who voted to approve the alleged improper payments – *i.e.*, the Bank's board or the HCBI board; or (2) if Outside Directors Champion or Anthony voted in favor of any of these payments. Indeed, the Complaint never alleges that the Champion and Anthony served on any committee that determined executive compensation or dividends, including the Compensation Committee of the HCBI Board, or that Champion and Anthony knew of the alleged improper compensation or dividends.

    <u>Second</u>, even if Champion and Anthony had voted in favor of the purported compensation and incentive payments at issue, and the FDIC had so alleged, the business judgment rule does not permit courts to "second guess directors' approval of executive compensation unless it constitutes 'corporate waste.'" *See Oakland County Employees. Ret. Sys. v. Massaro*, No. 09 CV 6284, 2010 U.S. Dist. LEXIS 92648, at 15-16 (N.D. Ill. Sept. 7, 2010). *See also Int'l Ins. Co. v. Johns*, 874 F.2d 1447, 1461 (11th Cir. 1989) ("courts do not invalidate executive compensation systems under the business judgment rule unless they constitute corporate waste"). To prevail under this "onerous" corporate waste standard, the FDIC must allege that "no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." *Oakland Cnty. Emps. Ret. Sys.*, 2010 U.S. Dist. LEXIS 92648, at 15-16. "[T]he *ex post* revelation that executive bonuses were higher than they ought to have been does not support a claim for corporate waste." *Id.*

    In *Int'l Ins. Co. v. Johns*, 874 F.2d at 1451, the board approved a "performance incentive" compensation plan for officers and certain employees of a bank. After the

bank settled a derivative action challenging the compensation plan, the bank's insurer sought a declaration that there was no coverage because the plan constituted corporate waste. *Id.* at 1450-51. Affirming the district court's decision that the plan was not corporate waste, the Eleventh Circuit held that, under the business judgment rule, an incentive compensation plan is not subject to second guessing by the court "as long as the compensation . . . bears a reasonable relationship to the services rendered." *Id.* at 1461. Under this "reasonable relationship test," the court must make three inquiries: (1) did the corporation benefit from the services rendered by the executive; (2) was "the compensation . . . so unreasonably disproportionate to the benefits received"; and (3) whether the officer was entitled to the payments under the incentive compensation plan. *Id.* at 1461-62.

Here, the Complaint does not allege contains no allegation that the compensation did not bear a reasonable relationship to the services rendered to the Bank or that the Bank did not receive sufficient benefits for the services rendered in exchange for the incentive payments. (*See* Compl. ¶¶ 43-46.)

Third, courts do not hold directors liable for approving executive compensation where the directors base their decision on reports and advice from the company's officers or where the company was contractually obligated to make the payments. *See Said*, 812 F. Supp. at 1270 (director's decision to approve "golden parachute" for former bank CEO not grossly negligent where relied on bank counsel and bank committees and the bank owed the money under an employment contract). Likewise, a board's approval of dividends "rests wholly in the business judgment of the board," *Hoefeller v. General Candy Corp.*, 275 Ill.App. 89, 1934 WL 2848, at *4 (1st Dist. 1934), and will

"not be controlled by the court so long as it is exercised in good faith and in honesty of purpose." *Noonan v. Harrington*, No. 09 CV 3191, 2010 WL 3785785, at *4 (C.D. Ill. Sept. 16, 2010). Directors may base their decision to award dividends on "financial statements prepared on the basis of accounting practices and principles that are reasonable in circumstances or fair valuation or other method that is reasonable in the circumstances." 805 ILCS 5/9.10.

Here, the FDIC alleges that the "Director Defendants," including Champion and Anthony, approved the dividend payments and incentive compensation now questioned by the FDIC in reliance on the advice of Defendant Faydash, the Bank's CFO, and the Bank's financial statements. (Compl. ¶¶ 43-44.) Faydash allegedly advised that the Bank was profitable and that "interest income on non-performing loans was not lost, but only 'deferred,' and would be realized by the Bank when the loans started to perform again." (*Id.* at ¶ 43.) Under the business judgment rule, outside directors are entitled to rely upon a Bank's CFO and financial statements in exercising discretion to approve dividends and payments under a Bank's performance incentive plan. This court thus should hold that the FDIC does not set forth sufficient facts to allege that the alleged approval of certain incentive payments and dividends constituted negligence, gross negligence, or breach of fiduciary duty on the part of Champion and Anthony.

Accordingly, this Court should hold that the FDIC's three categories of allegations – (A) oversight failure; (B) approval of loans that later went bad; and (C) ratification of certain compensation and dividends – fail to adequately plead that Champion and Anthony acted negligently, with gross negligence, or breached their fiduciary duties, and as a result, Counts I, II and III against Champion and Anthony must be dismissed.

**V.    The Complaint Fails to Allege That The Conduct Of Outside Directors Champion And Anthony Proximately Caused Injury To The Bank.**

Finally, even if the FDIC had adequately pleaded that Champion and Anthony breached their duties to Heritage, which it has not, the Complaint fails to allege that such a breach proximately caused an injury to the Bank.  See *Wallach v. Billings*, 277 Ill. 218, 115 N.E. 382 (1917) (bank director's failure to act will only give rise to liability if it has proximate relation to the injuries in question).   Under Illinois law, there are two aspects of proximate cause: cause in fact and legal cause.  *Young v. Bryco Arms*, 213 Ill.2d 433, 446, 821 N.E.2d 1078 (2004).  The Complaint satisfies neither standard.[7]

A breach of duty is considered the cause in fact of an injury only "when there is a reasonable certainty that a defendant's acts caused the injury or damage."  *Young*, 213 Ill. 2d at 446 (citation omitted).  To make this determination, courts ask whether the injury would have occurred absent the defendant's conduct and whether the defendant's conduct was "a material element and a substantial factor" in causing the injury.  *Id.*  Put another way, the actions of Champion and Anthony must be found to be the "but for" cause of the injury to the Bank: if the loss would have occurred just the same notwithstanding the alleged breach of duty, the Champion and Anthony cannot be held liable.  *Wallach*, 277 Ill. at 231.  Here, the Complaint asserts no facts that establish that the Defendants' actions were the "but for" cause of any injury to Heritage.  Likewise, the actions of the outside directors—who were not officers or employees of the Bank, did not serve on its Loan Committee, Compensation Committee, or HCBI Board—were simply not the cause in fact of the Bank's injuries.

---

[7]    Any allegations regarding proximate cause in the FDIC's Complaint (*see* Compl. ¶¶ 53, 60 & 67), are "conclusory statements of law," and  not sufficient to defeat a motion to dismiss for failure to state a claim.  *Northern Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995).

Moreover, the FDIC has not adequately pleaded that any such actions were the legal cause of the Bank's failure. Legal cause is established if the defendant's actions were "so closely tied to the plaintiff's injury that he should be held legally responsible for it. *Young*, 213 Ill. 2d at 446 (citation omitted). This requires an assessment of the foreseeability of the injury in question: the court must determine "whether the injury is of a type that a reasonable person would see as a likely result of his conduct." *Id.* at 446-47. When undertaking this analysis, Illinois courts consider "what was apparent to the defendant at the time" rather than "what may appear through the exercise of hindsight." *Zahl v. Krupa*, 399 Ill.App.3d 993, 1023, 927 N.E.2d 262 (2d Dist. 2010) (citing *Cunis v. Brennan*, 56 Ill.2d 372, 376, 308 N.E.2d 617 (1974)). Only those consequences which could have been known at the time of the actions should be considered. *Id.* (citation omitted). Here, as set forth at pages 13-15, the consequences of the Bank's CRE lending program were not foreseeable based on the facts knowable to Champion and Anthony during the relevant time period. Any suggestion that they could have or should have anticipated that the real estate bubble would burst, causing the current economic decline, is absurd. The FDIC is "in essence arguing backward from consequences, a tempting but erroneous approach in negligence cases." *Id.*

As a result, the FDIC's Complaint should be dismissed for this reason as well.

## CONCLUSION

For the foregoing reasons and those set forth in the Motion to Dismiss as well as the relevant portions of Saphir's Motion to Dismiss (the Factual Background and Sections I, II, and III of the Argument), Defendants Stephen Anthony and James K. Champion respectfully request that this Court grant its Motion to Dismiss under Rule 12(b)(6).

Dated: January 24, 2011

Respectfully submitted,

| _/s/ Aaron H. Stanton_ | _/s/ Sigal P. Mandelker_ |
|---|---|
| Aaron H. Stanton (IL Bar No. 6244251) | Sigal P. Mandelker (*pro hac vice*) |
| Burke, Warren, MacKay & Serritella, P.C. | Proskauer Rose LLP |
| 330 N. Wabash | Eleven Times Square |
| 22nd Floor | New York, NY 10036 |
| Chicago, IL 60611 | Telephone: (212) 969-3360 |
| Telephone: (312) 840-7078 | Facsimile: (212) 969-2900 |
| Facsimile: (312) 840-7900 | |

Counsel for Defendant Stephen Anthony

*- and -*

Steven R. Gilford (IL Bar No. 3121730)
Catherine J. Spector (IL Bar No. 6287459)
Proskauer Rose LLP
Three First National Plaza
70 W. Madison St., Ste. 3800
Chicago, IL 60606
Telephone: (312) 962-3550
Facsimile: (312) 962-3551

*Counsel for Defendant James K. Champion*

## CERTIFICATE OF SERVICE

I, Sigal P. Mandelker, do hereby certify that I have caused a true and correct copy of the foregoing to be served to the following attorneys, today January 24, 2011, by operation of the Court's CM/ECF electronic filing system:

Susan Valentine
Robinson Curley & Clayton, P.C.
300 South Wacker Drive, Suite 1700
Chicago, IL 60606
312 663-3100
svalentine@robinsoncurley.com
*Attorneys for Federal Deposit Insurance
Corporation, as Receiver of
Heritage Community Bank*

Thomas G. Gardiner
Gardiner Koch Weisberg & Wrona
53 West Jackson Boulevard, Suite 950
Chicago, IL 60604
(312) 362-0000
tgardiner@gkw-law.com
*Attorneys for Stephen L. Faydash*

Lawrence A. Stein
Huck Bouma PC
1755 South Naperville Road
Wheaton, IL 60187-8132
(630) 221-1755
Fax: (630) 221-1756
lstein@huckbouma.com
*Attorneys for Thomas Jelinek*

Aaron H. Stanton
Burke, Warren, MacKay & Serritella, P.C.
330 N. Wabash, 22nd Floor
Chicago, IL 60611
Telephone:  (312) 840-7078
Facsimile:  (312) 840-7900
astanton@burkelaw.com
*Attorneys for Stephen Anthony*

John M. George
Nancy Anne Temple
Katten & Temple LLC
542 South Dearborn Street, #1060
Chicago, IL 60603
(312) 663-0800
jgeorge@kattentemple.com
ntemple@kattentemplelaw.com
*Attorneys for John M. Saphir*

John J. Duffy
Donohue, Brown, Mathewson & Smyth
140 South Dearborn Street, Suite 700
Chicago, IL 60603
(312) 422-0900
john.duffy@dbmslaw.com
*Attorneys for Patrick G. Fanning*

Matthew F Tibble
Pretzel & Stouffer, Chtd.
One South Wacker Drive, Suite 2500
Chicago, IL 60606-4673
(312) 346-1973
mtibble@pretzel-stouffer.com
*Attorneys for William E. Hetler*

Anne M Abrell
Casale, Woodward & Buls, LLP
9223 Broadway, Suite A
Merrillville, IN 46410
(219) 736-9990
aabrell@cwblawfirm.com
*Attorneys for Lori A. Moseley*

William D. Dallas
Regas, Frezados, Harp & Dallas
111 West Washington Street, Suite 1525
Chicago, IL 60602
(312) 236-4400
wdd@rfd-law.com
*Attorneys for Jerry C. Brucer*

Brian Kevin McBrearty
McBrearty, Hart & Kelly
222 South Central Avenue, Suite 200
St. Louis, MO 63105
(314) 725-1227
mcbrearty@mcbreartylaw.com
*Attorneys for Mary C. Mills*

William Scott Porterfield
Sarah B. Waxman
Barack Ferrazzano Kirschbaum & Nagelberg
LLP
200 W. Madison Street, Suite 3900
Chicago, IL 60606
(312) 984-3100
Fax: (312) 984-3150
scott.porterfield@bfkn.com
sarah.waxman@bfkn.com
*Attorneys for Andrew B. Nathan*

By*:*   */s/ Sigal P. Mandelker*
      Sigal P. Mandelker