IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of Heritage Community Bank, <br><br> Plaintiff, <br> v. <br><br> JOHN M. SAPHIR; PATRICK G. FANNING; STEPHEN L. FAYDASH; WILLIAM E. HETLER; THOMAS JELINEK; LORI A. MOSELEY; STEPHEN ANTHONY; JERRY C. BRUCER; JAMES K. CHAMPION; ANDREW B. NATHAN; and MARY C. MILLS, <br><br> Defendants. | Case No. 10-cv-7009 <br><br> JURY DEMANDED <br><br> Judge Rebecca Pallmeyer |

### DEFENDANT STEPHEN L. FAYDASH'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE FDIC'S COMPLAINT

Defendant Stephen L. Faydash submits this Memorandum in Support of his Motion to Dismiss the Federal Deposit Insurance Corporation's ("FDIC") Complaint (the "Complaint") pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted.[1] The Complaint fails to meet the pleading standard as required by Fed. R. Civ. P. 12(b)(6) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). In addition, the alleged misconduct against Faydash is protected by Illinois' business judgment rule and the Illinois Banking Act. For the foregoing reasons, this Court should dismiss the Counts pled against Faydash with prejudice.

### FACTUAL BACKGROUND

---

[1] This Memorandum incorporates Defendant John M. Saphir's Memorandum in Support of his Motion to Dismiss the FDIC's Complaint ("Saphir's Brief") in its entirety.

1

Stephen Faydash was the Chief Financial Officer ("CFO") of Heritage Community Bank (the "Bank"). The Bank was a local south-suburban bank, which primarily served the Chicagoland community. Among other services, the Bank participated in commercial real estate ("CRE") lending. Due to the epic real estate market crash of the late 2000's, the Bank suffered massive losses on its CRE portfolio. As a result, on February 27, 2009, the FDIC closed the Bank. The FDIC brings this action in its capacity as receiver of the Bank, alleging that the failure was caused by actions taken by the Bank's eleven officers and directors.

The FDIC's Complaint vaguely alleges that the Bank's loan committee was inexperienced in making CRE loans. *Complaint* at ¶23. The Complaint further alleges that certain CRE loans were not creditworthy, that the Loan Committee and the Board of Directors were responsible for reviewing and approving such loans, and that the actual review was flawed and cursory. *Complaint* at ¶¶24-26. Essentially, the FDIC claims that such loans should not have been made, because the Loan Committee and Board of Directors should have known about the "real estate bubble" and, as a result, the Bank should not have paid dividends.

What the Complaint does not allege is that Defendant Faydash was involved in reviewing or approving any of the problematic CRE loans. Faydash was not on the Board of Directors, nor was he on the Loan Committee. *Complaint* at ¶¶7-17. In fact, Faydash's alleged duties to the Bank were to prepare financial statements and tax returns, submit the Bank's Quarterly Call Reports, and comply with the Bank's other regulatory reporting requirements. *Complaint* at ¶¶9, 89, 93 and 95. Faydash was uninvolved with the entire loan process in general.

The FDIC attempts to allege that Faydash was guilty of misconduct, claiming that he failed to increase loss reserves for the problematic CRE loans and that he failed to increase the Bank's capital cushion. However, the FDIC never alleges that Faydash was in a position to ensure against such loss, or even that he had a duty to do so.

The FDIC also claims that Faydash recommended that the bank pay dividends to its shareholders and incentives to its officers, and categorized interest on non-accrual loans as deferred and not lost. Again, this claim fails because it is not alleged that Faydash made any decisions and or that he was in a position to veto any of the Board's decisions. The Loan Committee and the Board of Directors were in a position to understand the Bank's condition and make an informed decision. There are no allegations attacking Faydash's integrity as a CFO or claiming that any of his financial statements inaccurately reported the Bank's financial condition.

Faydash was an outsider to the CRE lending program. He never made a decision regarding a loan or distributions. He was not in a position to stop the CRE lending program or to veto any of the Board's decisions. Overall, the FDIC's Complaint against the Defendants is vague and unsupported by well-pled facts; however, the allegations against Faydash are especially weak and unsupported. Therefore, the Counts against him must be dismissed.

## ARGUMENT

**I. PLAINTIFF'S COMPLAINT AGAINST DEFENDANT FAYDASH SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.**

The FDIC has filed three counts against Faydash. Count VII claims that Faydash was grossly negligent in violation of the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), 12 U.S.C. Section 1821(k); Count VII is a purported

3

negligence count under Illinois law; and Count IX seeks to state a claim for breach of fiduciary duty under Illinois law. Plaintiff's Complaint against Faydash does not meet the *Twombly* standard, and as a result, Plaintiff's Counts VII, VIII and IX against him should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *Twombly* and its progeny require that facts shall be pled to state a plausible claim on their face and that the pleaded facts must go beyond speculation by providing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Furthermore, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). However, this sort of conclusory, formulaic recitation of elements is exactly what is pled in Plaintiff's Counts against Defendant Faydash, and therefore, those counts must be dismissed.

    **A. The Complaint Against Faydash is Legally Insufficient, Because Counts VII, VIII, and IX Fail to Plead that the Alleged Duty was Breached.**

Plaintiff's Counts against Defendant Faydash fail to plead that Faydash breached any of his alleged duties. Plaintiff alleges in its Complaint that Faydash owed the Bank a duty to use "reasonable care, skill and diligence in" in performing his duties. *Complaint*, ¶¶89, 93. The Plaintiff further alleged that Faydash owed the Bank a fiduciary duty and was required to use the "utmost care" in performing his duties. *Complaint*, ¶¶95. However, this standard is inaccurate, as the courts have found a breach of fiduciary duty and negligence to be the same claim. *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2006). The correct standard by which Faydash's conduct should be measured is "ordinary care." *Bierman v. Stanley*, 2 F.3d

4

1424, 1434 (7th Cir. 1993). Regardless, the only duties pled are Faydash's duty to: *prepare* financial statements and tax returns; *submit* reports; *comply* with regulatory requirements; analyze data to *prepare* such reports; and to accurately *present* the Bank's financial position. *Complaint*, ¶¶89, 93, 95. However, the Complaint does not allege that Faydash breached these duties.

Subparagraphs 90(a)-(b), 94(a)-(b), and 96(a)-(b) essentially allege that Defendant Faydash failed to ensure adequate ALLL reserves, despite indicators that showed the CRE Lending Program was failing and that he failed to maintain adequate capital to cushion such losses. *Complaint*, ¶¶90, 94, 96. However, the Complaint never alleges that "ensuring … reserves" or "ensuring …sufficient capital" was his duty as CFO. The Complaint neither alleges that Defendant Faydash is a director or decision-maker charged with setting the ALLL reserves or capital cushion, nor does it allege that he was on the loan committee that approved the CRE loans. Faydash cannot be liable for breaching duties that he is not alleged to have had.

Subparagraphs 90(c)-(d) 94(d) and 96(d) essentially allege that Faydash improperly *advised* the Board to approve dividends or that he *recommended* unreasonable dividends, when he should have advised the Board to increase ALLL reserves and Bank capital. *Complaint*, ¶¶90, 94, 96. Again, the Plaintiff fails to allege that such actions fell within Faydash's duty. Faydash's basic duties, as alleged, were to prepare documents, comply with reporting standards, and accurately report the Bank's financial condition, not "recommend or advise" the Board to take any particular action.

Subparagraphs 94(c) and 96(c) allege that Faydash "failed to accurately advise the Board of Directors about the financial condition of the Bank." *Complaint*, ¶¶ 94, 96.

Again, Faydash's alleged duty was not to advise the Board, but to merely ensure accurate reports. It is curious that the Complaint never attacks the accuracy or integrity those financial reports. If those reports were accurate, how could Faydash possibly have failed to accurately advise the Board? Faydash's only alleged duty was to ensure accurate reporting, and the Complaint never attacks any report, submission, or finding. Because the alleged duty, which sounds in *preparation* and *submission* of reports, is not claimed to have been breached, the Counts against Faydash must be dismissed.

### B. The Complaint is Vague on its Face and Does Not Provide Faydash with Notice of the Claims Against Him.

Even if it was Faydash's duty to ensure the adequacy of the ALLL reserves and cushion capital or recommend increasing the reserves, the Complaint still fails to properly state a claim. Nowhere in its Complaint does the FDIC allege proper facts supporting its conclusion that he failed to adequately maintain the ALLL reserves or cushion, that he should have known the reserves and cushion were inadequate, or that he otherwise knew the Bank was failing. Plaintiff's allegations do not meet the *Twombly* standard because they are broad, conclusory, and fail to allege supporting facts; thus, the Complaint against Faydash must be dismissed.

Subparagraph 90(a) alleges that there were "indicators" that Faydash should have noticed, but the Complaint does not enumerate them. *Complaint*, ¶89. Even further, there are no facts indicating *how* any of the alleged "failures" could rise to the level of negligence or gross negligence. The court should not strain to find inferences. *Devine v. Robinson*, 131 F. Supp. 2d 963, 967 (N.D. Ill. 2001); *see also Kohl v. Murphy*, 767 F. Supp. 895, 897-98 (N.D. Ill. 1991). To flatly state that Faydash failed in his

6

duties, without detailing where, how or to what degree he failed, does not provide Faydash proper notice to defend himself as required by *Twombly*.

Subparagraphs 90(c)-(d) allege that Faydash improperly advised the Board in two respects: first, to approve dividends when he should have recommended an increase in the ALLL, and second, that non-accrual interest was not lost, but only deferred. *Complaint*, ¶90, 94, 96. Again, the Plaintiff's sweeping allegations are unsupported by facts. There are no facts pled stating why he should have recommended to increase the ALLL accounts or why he should have known to recommend such. There is no allegation that specific loans needed increased reserves and there is no specificity as to why or by how much the capital cushion was insufficient. The Complaint pleads neither any detail as to why the dividends should not have been paid nor any allegations that Faydash violated the Bank's policies in calculating those dividends. Moreover, the allegation that Faydash improperly advised the Board that the interest income on non-accrual loans was not lost, but rather deferred, is also vague. *Complaint*, ¶90. This allegation does not give detail as to the specific loans to which he was referring or why the statement was negligent, nor does the Complaint plead the context in which that statement was made. The Plaintiff does not even allege that the statement proved to be false; it could prove correct if certain loans were actually recovered.

The Complaint is packed with generalized statements: "Defendants were aware of a 'real estate bubble;'" "Faydash failed to maintain sufficient reserves"; it was "apparent that the CRE Lending Program was failing;" the "ALLL was insufficient;" etc. *Complaint*, ¶¶21, 37, 46. Yet, the Complaint never states *how* or *why* Faydash should

7

have known the CRE program was in trouble or that the Bank would take on certain losses. The reason for this, of course, is that Faydash and the other Defendants could not possibly have known of the impending market crash. The foregoing, "sketchy" allegations are exactly what the *Twombly* standard prevents.

### C. Loss Reserve Recommendations Are Subjective and Plaintiff Fails to Allege that Faydash Knew They Were Inadequate or that They Were Improperly Calculated, and that Failure Prevents this Court from Inferring that Faydash Was Culpable.

The Plaintiff's Complaint should be dismissed because it fails to plead that Faydash believed that the ALLL reserves were inadequate; therefore, this Court cannot infer that Faydash was negligent or breached his fiduciary duty. Whether reserves are adequate is not a matter of objective fact, but rather a statement of the Bank's opinion regarding what portion of its loan portfolio would be uncollectable. *Belmont Holdings Corp. v. Sun Trust Banks, Inc.*, 2010 U.S. Dist. Lexis 94569 at *18 (N.D. GA, Sept. 10, 2010). Statements regarding the ALLL reserves are only actionable if it is alleged that Faydash did not actually *believe* that the reserves were adequate. *In re CIT Group*, 349 F. Supp. 2d 685, 689 (S.D.N.Y. 2004). However, the Complaint does not allege that Faydash knew the reserves were insufficient or even that his analysis of possible loan recovery was faulty. Furthermore, Plaintiffs have not alleged that Faydash knew that the reserves were insufficient when he recommended dividends.

Faydash, as CFO, was required to complete financial statements in accordance with Generally Accepted Accounting Principals ("GAAP"). 12 C.F.R. §362.2. The standard for determining loan losses is determined in Financial Accounting Standards ("FAS") 5 and 114. Policy Statement on Allowance for Loan and Lease Losses Methodologies and Documentation for Banks and Savings Institutions, 66 Fed. Reg.

8

65635 (July 2, 2001). "Regardless of the methods used to measure losses, an institution should demonstrate and document that the loss measurement methods used to estimate the ALLL for each segment are determined in accordance with GAAP as of the financial statement date." *Id.* However, Plaintiff has not alleged that Faydash or the Bank failed to meet GAAP standards in calculating ALLL.

Furthermore, one of the major elements of calculating ALLL includes a historical analysis of loss rates and such a historical analysis would not reflect much loss.

> One method of estimating loan losses for groups of loans is through the application of loss rates to the groups' aggregate loan balances. Such loss rates typically reflect the institution's historical loan loss experience for each group of loans, adjusted for relevant environmental factors (e.g., industry, geographical, economic, and political factors) over a defined period of time.

*Id.* at 65635. The Bank's Uniform Bank Performance Reports ("UBPR") for the first three quarters of 2006 reflect miniscule losses of approximately a third of a percent. *Saphir's Brief* at 3-4. Taking into account that GAAP does not allow so-called "cookie jar" reserves and that a proper methodology is to use prior loan performance to estimate future loan losses (which in this case were minimal), it is inconceivable that Faydash or the Bank would be *required* to increase such ALLL reserves, or that failing to do so was negligent or grossly negligent. *Saphir's Brief* at 18-19. The entire ALLL calculation is backward-focused; in fact, the Federal Financial Institution's Examination Council's policy statement even suggests that a small institution, such as the Bank, should determine its loan losses on loss rates by referring in part to a three-year historical period. 66 Fed. Reg. at 65635. Although an institution should modify the estimated loan losses based on environmental factors, Plaintiff never alleges that Faydash failed to do so. *Id.* For the Plaintiff's Complaint to any have merit, GAAP would need to have

9

*required* Faydash to estimate losses based on future market performance and ignore the CRE market's prior success. Even in such a hypothetical situation, Faydash (along with Wall Street and the rest of the world) would have needed to be clairvoyant to anticipate the sort of real estate losses that the market actually suffered.

Due to the combination of GAAP's guidelines allowing a historical loss analysis, GAAP's prohibition on cookie-jar reserves and the swiftness of the real-estate market collapse, it is inconceivable that a CFO could be grossly negligent, or even negligent for that matter, for not anticipating the market crash and failing to properly calculate ALLL. There are no facts pled that demonstrate that Faydash failed to comply with GAAP standards or otherwise took any action that contributed to the Bank's failure. The foregoing is all the more reason such a vague Complaint must be dismissed.

### D. Plaintiff's References Refute Its Own Allegations.

In addition to the foregoing, Plaintiff cites to UBPR reports in its Complaint, but does not attach them to the Complaint; however, a review of these reports actually refutes many of the allegations in the Complaint. The UBPR reports for March 31, June 30 and September 30, 2006 and attached to Saphir's Brief contradict the allegation that Faydash should have raised the ALLL. *Saphir's Brief* at 3-4, 11. By September 30, 2006, the Bank's net CRE loss was only .30%, which was an improvement compared to previous months and the Bank's peer group. *Saphir's Brief* at 4. Furthermore, the UBPRs indicate that the Bank had actually increased its ALLL reserves to an "amount over one and a half times its actual loss experience." *Id.* These numbers indicate, at the least, that the Bank's CRE program was not failing and combined with the GAAP

requirements stated in Section C above, Faydash could not have been grossly negligent or negligent for failing to increase the reserves.

### E. The Complaint's Allegations Do Not Support a Conclusion that Faydash's Conduct Was the Proximate Cause of the Bank's Failure.

Defendant Faydash cannot be held liable for the Bank's losses absent a showing that his acts or omission proximately caused subsequent losses. Proximate cause is that cause, which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of, and without such cause the result would not have occurred. *Resolution Trust Corp. v. Franz*, 909 F. Supp. 1128, 1143 (7th Cir. 1995). Essentially, it is "but for" causation. *Id.* The alleged misconduct of Faydash cannot be found to be the "but for" factor of the bank's failure, and therefore, the Counts against him must be dismissed.

The Complaint alleges that the Bank's CRE Loan underwriting process was flawed. *Complaint*, ¶¶24-32. The basic allegations are that the loan officers were inexperienced in filtering problematic loans; the CRE loans only received a cursory review by the Loan Committee; and the CRE loans were approved the Board of Directors. *Complaint*, ¶24. As a result of these problems, Plaintiff alleges, the deficient losses on the loans (the most likely "but for" factor) ultimately caused the Bank's demise. However, the Complaint never alleges that Faydash was either a loan officer, on the Loan Committee, or a Director; the Complaint only alleged that he failed to maintain a sufficient capital cushion and failed to increase reserves. Additionally, there is no allegation that Faydash was capable of preventing the increase in the CRE lending program or changing the program's policies. The FDIC cannot make such allegations in good faith.

11

Additionally, the Complaint alleges it was the Board of Directors' decision to increase the capital cushion and reserves, and to ultimately make distributions, not Faydash's. *Complaint*, ¶43-46. Directors are charged with keeping abreast of a bank's business and must exercise reasonable control over the activities of the bank. *Bierman v. Stanley*, 2 F.3d 1424, 1433 (7th Cir. 1993). Directors cannot rely blindly on the judgment of others, they cannot "shut their eyes to what is going on around them." *Id.* Basically, the "buck stops" with the directors. That fact breaks the causal chain with respect to Faydash's alleged recommendations and advice.

Faydash's duty was to accurately inform the Board of the Bank's financial situation. Plaintiff has not attacked the integrity of the reports or financial statements he prepared. To the contrary, the allegation that the "[Bank's] regulators criticized the Bank for exceeding supervisory LTV limits" implies that regulators were properly informed of the Bank's practices as reported by its CFO, Faydash. *Complaint* at ¶30. Again, it was not Faydash's duty to make decisions or veto the decisions of the Board; rather, it was the Board's duty to make informed decisions based in part upon the data provided to it by Faydash.

In sum, Faydash was not on the Loan Committee or the Board of Directors; he was charged with the duty to report data to the Board, and the integrity of that data is not in question. Armed with that data, it was the Board's duty was to make ultimate decisions. Those decisions break the causal chain. Faydash did not have the power to stop the Board's decision or to sway it. Plaintiff's statement that "the Bank would have survived, but for Faydash's recommendation or conduct" is entirely without factual or

12

logical support. Because Faydash's conduct is not the proximate cause of the alleged damage, the Complaint against him must be dismissed.

## II. PLAINTIFF'S STATE CLAIMS AGAINST DEFENDANT FAYDASH SHOULD BE DISMISSED BECAUSE THEY ARE BARRED BY THE BUSINESS JUDGMENT RULE.

Plaintiff's Counts VIII and IX allege that Defendant Faydash breached his fiduciary duty and was negligent in (1) failing to ensure the Bank's ALLL reserves were sufficient; (2) failing to ensure that the Bank maintained a sufficient level of capital; (3) failing to accurately advise the Board of Directors about the financial condition of the Bank; and (4) recommending dividends that were unreasonable in light of the Bank's financial condition. *Complaint* ¶¶93-97. Plaintiff's Breach of Fiduciary Duty and Negligence Counts (the "State Claims") are identical and will be dealt with together, as the business judgment rule bars both equally. *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2006) (stating that a "negligence claim [is] nothing more than a reiteration of the fiduciary duty claim with a negligence label attached to it").

Under Illinois law, the business judgment rule applies to decisions of executive officers as well as those of directors: "neither the directors nor the officers of a corporation are liable for mere mistakes or errors of judgment, either of law or fact." *Selcke v. Bove, et. al.*, 629, N.E.2d 747, 750 (Ill. App. Ct. 1994). The rule assumes that directors and officers of a corporation make business decisions on an informed basis, in good faith, and with the honest belief that the course taken was in the best interest of the corporation. *Talton v. Unisource Network Services, Inc.* No 00 C 7967, 2004 WL 2191605 (N.D. Ill. Sept. 27, 2004) at *14 quoting Ferris Elevator Co., Inc. v. Neffco, Inc.*, 674 N.E.2d 449, 552 (Ill. App. Ct. 1996). Absent "evidence of bad faith, fraud, illegality

13

or gross overreaching, courts are not at liberty to interfere with the exercise of business judgment." *Fields v. Sax*, 462 N.E.2d 983, 988 (Ill. App. Ct. 1984).

In *Stamp v. Touche Ross & Co.* the Director of Insurance of the State of Illinois brought suit against the defendant directors of a liquidated insurance company. *Stamp v. Touche Ross & Co.* 636 N.E.2d 616, 619 (Ill. App. Ct. 1993). The complaint alleged that the defendants:

> (a) Failed to develop and implement adequate underwriting procedures and controls;
> (b) Consistently underpriced reinsurance and insurance business written by Pine Top;
> (c) Failed to develop and implement adequate procedures and controls with respect to establishing reserves; . . .
> (e) Failed to set appropriate reserve liabilities for incurred but not reported claims; . . .
> (s) Failed to accurately disclose Pine Top's true financial condition in its Annual Statements ….

*Id.* The *Stamp* court noted that the complaint attacked the decisions of the defendants, and held that the complaint was insufficient because it "lacked allegations of fraud, illegality or conflict of interest" on the part of the defendants. *Id.* at 623. The court further opined that absent such allegations, the directors could only be attacked by alleging facts showing lack of due care in making those decisions. *Id.* The allegations in the case at bar are strikingly similar to those pled in *Stamp*, and should similarly be dismissed.

Furthermore, all of the four alleged acts of negligence and breach of fiduciary duty against Faydash attack his actions, work product or decisions, but do not claim that he acted without informed judgment, in bad faith or other than in the best interest of the corporation when he allegedly: (1) Failed to ensure that the Bank's ALLL reserves were sufficient as reflected in the Bank's financial statements; (2) Failed to ensure that the

14

Bank maintained a sufficient level of capital; (3) Failed to accurately advise the Board of Directors about the financial condition of the Bank; or (4) Recommended dividends and incentive compensation award payments that were unreasonable. *Complaint* at ¶¶93-97. Because the Complaint fails to allege that Faydash acted without informed judgment, in bad faith, or other than in the best interest of the corporation, it must be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(6).

The State Claims against Faydash should be dismissed because the business judgment rule, which is extended to officers of a corporation, prohibits courts from second-guessing the actions of those officers absent very specific allegations of wrong-doing. In this case, such conduct has not been alleged against Faydash, and therefore the allegations cannot stand. The State Claims against Faydash must be dismissed with prejudice.

### III. IN THE ALTERNATIVE, THE STATE CLAIMS AGAINST FAYDASH ARE BARRED BY ARTICLE 39 OF THE ILLINOIS BANKING ACT.

Faydash was not a decision maker involved in the actions that underpin the FDIC's complaint. If this Court were to rule otherwise, such management duties would be protected by Illinois law. 205 ILCS 5/2-2. If Faydash's duty is heightened to an adviser, he should be afforded the "director defenses" provided by Article 39 of the Illinois Banking Act. This defense is extensively and effectively put forth in Saphir's Brief.

### CONCLUSION

For the foregoing reason Defendant Faydash respectfully requests this Court to dismiss the FDIC's Complaint with prejudice.

Dated: January 24, 2011

Respectfully submitted,

 /s/  Thomas G. Gardiner

Thomas G. Gardiner
Clinton J. Ind
GARDINER KOCH WEISBERG & WRONA
53 W. Jackson, Suite 950
Chicago, Illinois 60604
(312) 362-0000
(312) 362-0440 (facsimile)

Counsel for Defendant Stephen L. Faydash