IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of Heritage Community Bank,<br><br>            Plaintiff,<br>v.<br><br>JOHN M. SAPHIR; PATRICK G. FANNING; STEPHEN L. FAYDASH; WILLIAM E. HETLER; THOMAS JELINEK; LORI A. MOSELEY; STEPHEN ANTHONY; JERRY C. BRUCER; JAMES K. CHAMPION; ANDREW B. NATHAN; and MARY C. MILLS,<br><br>            Defendants. | Case No. 10-cv-7009<br><br>JURY DEMANDED<br><br>Judge Rebecca Pallmeyer |

## DEFENDANT JOHN M. SAPHIR'S REPLY BRIEF IN SUPPORT OF MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL

Saphir seeks leave to file under seal the official Report of Examination sent by the regulators of the former Heritage Community Bank to the board on November 20, 2006. Saphir cites the Report of Examination in his motion to dismiss, which was filed on January 24, 2011. The FDIC does not dispute the authenticity of the 2006 Report of Examination, which the FDIC's counsel previously provided to Saphir's counsel at Saphir's deposition in the FDIC's administrative investigation into Heritage Community Bank.

Rather, the FDIC opposes Saphir's motion, contending that under Rule 12(b)(6), the Court is not permitted to consider the Report of Examination to its motion to dismiss because it is not a contract central to the FDIC's claim. The FDIC misstates Seventh

1

Circuit law on consideration of documents not attached to a plaintiff's complaint and misstates its own Complaint. The Report of Examination is indeed central to the FDIC's breach of fiduciary duty claim against Saphir and the other officer and director defendants and this Court should be allowed to consider it on a motion to dismiss. Finally, the FDIC concedes that the Report of Examination should be filed under seal if the Court determines that it should consider the Report in deciding Saphir's Motion to Dismiss. By limiting its Response to arguing that the Report of Examination is irrelevant to Saphir's Motion to Dismiss, the FDIC is essentially asking the Court to address issues raised in Saphir's motion to dismiss on a piecemeal basis before briefing on the Motion to Dismiss is complete. Such an argument is premature and presents no basis for denying Saphir's Motion for Leave to File Document Under Seal. At most it suggests that the Court should defer a decision on Saphir's Motion for Leave until it has an opportunity to consider all the pleadings on Saphir's Motion to Dismiss.

The FDIC fails to distinguish *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009), in which the court affirmed the district court's reliance on summary plan descriptions and a trust agreement to dismiss an ERISA breach of fiduciary duty claim against defendants. These documents were central to the plaintiffs' case and the district court properly considered supplements to the summary plan descriptions, even though those documents were not mentioned in the complaint. *Id.* at 582. The defendants had properly offered the documents to show notice to the plaintiffs. *Id.* The Seventh Circuit stated that "[t]his court has been relatively liberal in its approach to the rule articulated in *Tierney [v. Vahle,* 304 F.3d 734 (7th Cir. 2002)], and other cases." *Hecker*, 556 F.3d at 582. As noted in *Hecker*, courts have routinely considered

prospectuses in securities fraud cases to dismiss claims even though plaintiffs did not mention such documents in their complaints because such documents were dispositive of the plaintiffs' claims. *Id.* at 583.

Even the cases cited by the FDIC acknowledge that the "narrow exception" to the general rule that documents outside the complaint are usually not considered on a Rule 12(b)(6) motion to dismiss is not limited simply to considering only contracts on breach of contract claims. *ABN Amro, Inc. v. Capital International, Ltd.,* No. 04 C 3123, 2007 WL 845046, at *5 (N.D. Ill. Mar. 16, 2007), for example, states that "courts sometimes consider noncontractual extrinsic documents on a motion to dismiss; in addition, sometimes courts consider such documents in non-contract cases." The court in *ABN Amro* explained that Rule 12(b)(6) is primarily concerned with notice to the plaintiff of the relevant document, and stated that where the plaintiff has had actual notice of the document at issue, the concern underlying the need to convert a Rule 12(b)(6) motion to a Rule 56 motion "is largely dissipated." *Id.* at *7 (citing *Tierney, supra,* and *Cortec Industries, Inc. v. Sum Holding LP,* 949 F.2d 42, 48 (2d Cir. 1991), which is cited in *Tierney*). Thus, courts routinely and properly consider prospectuses and SEC filings in securities fraud cases even though such documents are not referenced in those complaints because the plaintiffs had notice of those documents. *See also Seidel v. Byron,* 405 B.R. 277, 284-85 (N.D. Ill. 2009) (court considered SEC filings, bankruptcy court records and certificate of incorporation of company on Rule 12(b)(6) motion).

The other cases cited by the FDIC are distinguishable. *Beringer v. Zeag-USA, Inc.,* No. 07 C 5027, 2008 WL 4890501 (N.D. Ill. Nov. 12, 2008), involved only a breach of contract claim and the contract was properly considered. And *Franks v. MKM Oil,*

3

*Inc.*, No. 10 C 13, 2010 WL 3613983, at *8 (N.D. Ill. Sept. 8,. 2010), is inapposite because there the plaintiff did not rely on the documents cited by defendants to state a claim.

Here, by contrast, the FDIC's Complaint expressly incorporates the 2006 Report of Examination. In paragraph 38 of the Complaint, the FDIC alleges that Heritage's commercial real estate lending program ("CRE") grew to $178 million by 2006 and "[b]ecause Heritage undertook this uncontrolled growth without increasing its capital, the June 30, 2006, Report of Examination by the Illinois Department of Financial and Professional Regulation reported that Heritage's $178 million in construction and development loans amounted to 634% of the Bank's Tier 1 capital. *Yet, Defendants failed to heed regulatory criticism warning them to control their CRE lending and set appropriate limits to avoid over-concentration in this area.*" Complaint, ¶38 (emphasis added). The FDIC also bases its claim against Saphir in part on a January 4, 2007 letter he wrote to the Illinois Department of Financial and Professional Regulation in response to the 2006 Report of Examination, criticizing Saphir for suggesting that Heritage's management had implemented sufficient controls in its underwriting and loan monitoring functions to properly manage risk in its loan portfolio. *Id.* ¶30; see 2006 Report of Examination, FDIC Ex. 7 at p. 4 (reference to written response).[1] The FDIC alleges that Saphir's letter was incorrect because "[i]n fact, [Heritage's] controls were insufficient to manage the risk of high-LTV [loan-to-value] loans." Complaint, ¶30. The 2006 Report of Examination is integral to dispel the FDIC's claim that Heritage was poorly managed as of late 2006. *See* 2006 Report of Examination, FDIC Ex. 7 at p. 3,

---

[1] FDIC's counsel provided a copy of the 2006 Report of Examination to Saphir's counsel marked as FDIC Exhibit 7. The page references cite to the pages of the Exhibit, so "p. 4" refers to the fourth page of the document.

¶3 (addressing overall condition of the bank and the examiners' assessment of the board, management, capital levels, asset quality, earnings quality and interest rate risk).

Throughout the Complaint, the FDIC repeatedly alleges that "[b]y December 1, 2006, each Defendant knew the Bank's CRE Lending Program was failing and threatening the Bank's viability" (¶4), but that defendants failed to heed purported regulatory warnings about that alleged failure and breached fiduciary duties by continuing the CRE Lending Program after December 1, 2006. *Id.* ¶ 39 ("By the end of 2006, Heritage's CRE Lending Program was failing."); ¶40 ("From December 1, 2006, until the Bank's failure on February 27, 2009, the Loan Committee and the Board of Directors approved an additional $86.3 million in CRE-related loans."); ¶43 ("After December 1, 2006, Defendants made no attempt to bolster the Bank's ALLL reserves or increase Bank capital."); ¶46 (Heritage paid out dividends and incentive compensation "after December 1, 2006, when it was apparent that the CRE Lending Program was failing, the ALLL was insufficient, and the Bank's capital was inadequate to provide a cushion against losses in its CRE portfolio."); ¶52 ("After December 1, 2006, the Director Defendants should have also increased the loan loss reserves and Bank capital."); *see also id.* ¶¶58, 59, 65, 66, 72, 79, 85, 90, 91, 95, 97. The 2006 Report of Examination, sent to the board on November 20, 2006, expressly addresses the Bank's capital; asset quality; commercial real estate loans, risks and procedures; and the loan loss reserves or the allowance for loan and lease losses ("ALLL"). *See* 2006 Report of Examination, FDIC Ex. 7 at pp. 6, 9, 10, 11.

The FDIC repeatedly bases its claims against Defendants on alleged failure to comply with warnings and deficiency findings by the regulators in the Report of

5

Examination. Specifically the FDIC alleges that the Heritage Defendants are liable because they were responsible for monitoring and controlling risk and allegedly breached fiduciary duties in failing to do so and in failing to adhere to regulatory lending and appraisal guidelines. Complaint, ¶¶22, 23, 25, 26, 29, 30, 31, 33, 38. The FDIC further alleges that Defendants breached alleged duties by not "[c]omplying with regulatory standards regarding [Heritage's] CRE Lending Program" and by not "[c]orrecting deficiencies identified in Reports of Examination performed by state and federal bank examiners." *Id.* ¶49(D) and (E). Those allegations are repeated against the Director Defendants. *Id.* ¶¶55(D) and (E), 62(D) and (E), 71(D) and (E). The FDIC also alleges that the Director and Loan Committee Defendants breached duties by approving unspecified CRE loans that allegedly violated regulatory LTV and appraisal standards. *Id.* ¶¶57(C)(1) and (2), 64(C)(1) and (2), 73(C)(1) and (2), 78(C)(1) and (2), 84(C)(1) and (2).

In light of the FDIC's own allegations, there can be no question that the 2006 Report of Examination, which was transmitted to Heritage on November 20, 2006, and which examined Heritage's management, procedures, and CRE Lending Program and issued findings regarding the Bank's soundness, quality of management, compliance with regulatory standards, and Heritage's loan portfolio, is central to the FDIC's claim that Heritage management was unqualified, violated regulatory standards and knew that the CRE Lending Program was failing by December 1, 2006.

There is no concern about the authenticity of or the FDIC's notice of the 2006 Report of Examination, which is an official regulatory examination report that the FDIC itself cites in the Complaint. Under well-established Seventh Circuit precedent, this

6

Court can properly consider the 2006 Report of Examination in ruling on Saphir's motion to dismiss. At the very least, this issue should be considered in conjunction with Saphir's motion, the FDIC's opposition (which is due March 18, 2011), and Saphir's reply brief (which is due April 15, 2011).

## CONCLUSION

For the foregoing reasons, defendant Saphir respectfully requests that this Court grant his motion for leave to file the 2006 Report of Examination under seal.

February 8, 2011                              Respectfully submitted,

/s/ John M. George, Jr.

John M. George, Jr.
Nancy A. Temple
KATTEN & TEMPLE LLP
542 S. Dearborn St., Suite 1060
Chicago, Illinois 60605
312-663-0800
312-663-0900 (fax)
Counsel for Defendant John M. Saphir

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, states that on the 8th day of February, 2011 he electronically filed the foregoing document entitled Defendant John Saphir's Reply Brief in Support of His Motion for Leave to File Document Under Seal with the Clerk of the Court using the CM/ECF system which sent notification to the following:

/s/ John M. George, Jr.

Aleeza M Strubel    astrubel@robinsoncurley.com, nball@robinsoncurley.com

Barry C. Owen    bowen@gkwwlaw.com

Brian Kevin Mcbrearty    mcbrearty@mcbreartylaw.com, murdock@mcbreartylaw.com

James F. Smith    jsmith@clausen.com, kuram@clausen.com

John M. George    jgeorge@kattentemple.com

Joshua Avinoam Aldort    jaldort@clausen.com, kdanta@clausen.com

Kelly A Saindon    ksaindon@belongialaw.com, crussell@belongialaw.com, pmcinnis@belongialaw.com

Mark D Belongia    mbelongia@belongialaw.com, pmcinnis@belongialaw.com

Mitchell J. Edlund    mitch.edlund@mbtlaw.com

Nancy Anne Temple    ntemple@kattentemplelaw.com

P. Scott Ritchie    pritchie@clausen.com, kuram@clausen.com

Steven Dale Pearson    steve.pearson@mbtlaw.com, arleen.burke@mbtlaw.com

Susan Valentine    svalentine@robinsoncurley.com, dmshields@robinsoncurley.com

William D. Dallas    wdd@rfd-law.com