# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of Heritage Community Bank, <br><br> Plaintiff, <br><br> v. <br><br> JOHN M. SAPHIR; PATRICK G. FANNING; STEPHEN L. FAYDASH; WILLIAM E. HETLER; THOMAS JELINEK; LORI A. MOSELEY; STEPHEN ANTHONY; JERRY C. BRUCER; JAMES K. CHAMPION; ANDREW B. NATHAN; and MARY C. MILLS, <br><br> Defendants. | Case No. 10-cv-07009 <br><br> Judge Rebecca R. Pallmeyer <br><br> Magistrate Judge Arlander Keys |

## JOINT REPLY IN FURTHER SUPPORT OF
## JOINT MOTION TO DISMISS COMPLAINT

Aaron H. Stanton (IL Bar No. 6244251)
Burke, Warren, MacKay & Serritella, P.C.
330 N. Wabash
22nd Floor
Chicago, IL 60611
Telephone:  (312) 840-7078
Facsimile:  (312) 840-7900

*Counsel for Defendant Stephen Anthony*

Sigal P. Mandelker (*pro hac vice*)
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036
Telephone:  (212) 969-3360
Facsimile:  (212) 969-2900

*- and -*

Steven R. Gilford (IL Bar No. 3121730)
Catherine J. Spector (IL Bar No. 6287459)
Proskauer Rose LLP
Three First National Plaza
70 W. Madison St., Ste. 3800
Chicago, IL 60606
Telephone:  (312) 962-3550
Facsimile:  (312) 962-3551

*Counsel for Defendant James K. Champion*

## INTRODUCTION

The FDIC's Memorandum in Opposition to Defendants' Motion to Dismiss (the "Opposition") fails to demonstrate that the FDIC has adequately pleaded a claim for breach of fiduciary duty, negligence, or gross negligence against the two **outside director** defendants, Champion and Anthony. The FDIC's interpretation of the current legal landscape would place insurmountable burdens on outside directors and make it impossible for small local banks to recruit and retain qualified outside directors, whom the FDIC seeks to hold to the same standards as bank insiders, who manage bank affairs on a day-to-day basis.[1]

## ARGUMENT

**I. The FDIC Improperly Groups Defendants Together and Makes No Specific Allegations against Champion and Anthony.**

There are four fundamental flaws in the FDIC's response to the fact that its Complaint lumps together and ignores crucial distinctions between inside and outside director defendants:

- One, the FDIC admits that Champion and Anthony, as outside directors, did not have "the same total volume of duties and responsibilities" as the inside director Defendants, "who serve[d] as both officers and directors." (Opp. at 17.)

- Two, as outside directors, Champion and Anthony had far less knowledge about allegedly improper loans or bank operations than the inside directors, who ran the Bank, including its day-to-day loan operations, and owned a significant portion of the Bank's holding company stock. (Compl. ¶ 7 (inside director Saphir worked for the Bank for 40 years as President, CEO, Chairman of the Board, and loan committee member and he and his family trusts owned 30% of the Bank's holding company stock); ¶¶ 8, 27 (inside director Fanning was the Senior Vice President, Chief Lending Officer, President and top lending officer as well as "primary originator" of the allegedly negligent loans).)[2]

---

[1] Champion and Anthony join and incorporate by reference the relevant portions of John M. Saphir's Reply brief ("Saphir's Reply").

[2] The FDIC wrongly implies that Champion and Anthony received $10.2 million in dividends during the two years prior to the Bank's failure. (Opp. at 17.) Champion and Anthony

- <u>Three</u>, the FDIC does not deny that prior to filing the Complaint it took extensive pre-suit discovery, **including taking 11 depositions and serving all the Defendants and the Bank's auditor and attorney with document subpoenas**, and thus has access to all the relevant facts, to the extent they exist, to set forth specific allegations against each defendant, including Champion and Anthony.

- <u>Four</u>, the FDIC admits that the Complaint fails to specifically allege that Champion and Anthony voted for any of the ten allegedly questionable loans. Instead, the FDIC alleges only that the Board of Directors as a whole voted to approve these loans. In so doing, the FDIC concedes that certain individual board members may have voted to reject certain loans.

Ignoring the above and the relevant law, the FDIC contends that grouping the Defendants together gives Champion and Anthony fair notice of the charges against each of them because they can review the hundreds of thousands of documents produced to date by the FDIC to determine the specifics of the vague and general charges. (Opp. at 16, n.15.) The FDIC fails to cite any case in support of this contention and glosses over the cases cited by Champion and Anthony that analyze allegations against bank directors, not as a single board of directors, but as individual directors, taking into consideration the different roles and responsibilities of inside and outside directors. For example, the court in *Washington Bancorporation v. Said*, in analyzing individual breach of fiduciary duty claims, segregated the independent, outside directors into a separate category from the director who served as chairman of the board and CEO. 812 F. Supp. 1256, 1272 (D.D.C. 1993). While the FDIC disputes that the court held outside directors to a lower standard of care, it cannot deny that the court held that "directors of a bank must satisfy different standards of care depending on the circumstances under which they operate during any given act." *Id.* at 1266.

---

respectively owned just 1.285% and .489% of the Bank's holding company, (Compl. ¶¶ 15, 13), and therefore would have received only a small percentage of the alleged dividend payments. Moreover, the FDIC fails to note that Champion and Anthony were outside directors at the Bank **but were not directors of the Bank holding company**.

Likewise, the court in *Ohlendorf v. Rathje*, 230 Ill. App. 427, 1923 WL 3327, at *6 (2d Dist. 1923), divided the directors into classes, based on their respective positions in the bank, roles on committees, and differing levels of knowledge of allegedly fraudulent activities. *Id.* at *6-7. The FDIC contends that these classifications are not relevant here because the court distinguished the different directors to analyze the evidence. (Opp. at 16-17.) This is a distinction without a difference. The purpose of differentiating classes of directors was to analyze whether the directors, given their different knowledge and duties, were liable. The first class, for example, included directors who had actual knowledge of wrongful conduct. *Ohlendorf*, 230 Ill. App. 427, 1923 WL 3327, at *6. The fourth class contained one director— whose poor health precluded him from attending numerous board meetings. *Id.* at *11. The court's assessment of liability, therefore, reflected each director's disparate level of knowledge and responsibility. *Cf. id.* at *5 ("In determining the question of liability of the directors in this case we must examine their conduct in reference to the discharge of their duties.").

Similarly, in *Resolution Trust Corp. v. Blasdell*, an action against directors of a failed S&L, the court found that the plaintiff had to provide "the identity of the defendants alleged to be involved in each transaction" if it wanted to base any of its claims on specified "unsafe or unsound transactions." 154 F.R.D. 675, 690 (D. Ariz. 1993). This requirement is consistent with the courts' disapproval of pleadings that lump individual defendants into a group yet fail to identify the specific actions taken by those individuals. *See In re Am. Int'l. Refinery*, 402 B.R. 728, 738 (Bankr. W.D. La. 2008) (finding that "[t]he allegations in the Complaint that refer to Defendants collectively" do not "provide adequate notice" under Rule 8(a)); *see also* Mem. at 6.

Here, the FDIC is not suing the "Board of Directors" as an entity but has named each director as a defendant. The FDIC's Complaint, thus, requires that Champion and Anthony respond to claims for individual conduct. The Complaint, however, does not allege any individual actions–only generalized group allegations regarding all 11 "Defendants" and all seven "Director Defendants." Such group allegations violate Rule 8(a) and are even more glaring given the FDIC's extensive pre-suit discovery.

Instead of citing case law to rebut this, the FDIC contends that requiring it to plead distinct allegations against outside directors would exempt them from their responsibilities. (Opp. at 16-17.) This concern is unfounded and misstates the law. Whether Champion and Anthony breached their duties as outside directors depends on their actions in light of their particular knowledge. Group pleading does not provide them with sufficient individual notice to defend themselves against these serious claims.

## II. The FDIC Fails to Sufficiently Plead That Champion or Anthony Proximately Caused the Bank's Injury.

Courts routinely dismiss complaints for failure to sufficiently plead proximate cause. *See Thompson's Gas & Elec. Serv., Inc. v. BP America Inc.*, 691 F. Supp. 2d 860, 870 (N.D. Ill. 2010) ("[w]ithout direct reliance and subsequent deception, there can be no proximate cause[] and Plaintiffs' claims cannot survive Defendants' motion to dismiss").[3] Here, the FDIC does not allege that Anthony or Champion voted to approve any of the alleged improper loans and fails to specifically allege how Anthony or Champion could have foreseen the real estate market meltdown. While the FDIC

---

[3] *See also Endencia v. ADT Sec. Servs., Inc.*, Case No. 08 C 4541, 2008 WL 4833111, at *3 (N.D. Ill. Oct. 28, 2008) (dismissing complaint because plaintiff did not sufficiently plead proximate causation); *Graham v. Midland Mortg. Co.*, 406 F. Supp. 2d 948, 953 (N.D. Ill. 2005) (dismissing complaint when plaintiff "failed to show that Defendants were the proximate cause of his injuries").

contends in its Opposition that Anthony and Champion "presided over the ruinous CRE Lending Program" and "voted to approve the loans, dividends, and incentive payments that caused the damages," (Opp. at 22), these allegations are not in the Complaint. Rather, the FDIC summarily asserts that the alleged gross negligence of the Director Defendants, as a unit, was the proximate cause of the Bank's damages. (Compl. ¶ 53.) The FDIC, however, brings this action against the directors as individuals, and should provide Champion and Anthony with notice of at least one action or omission alleged to have proximately caused the Bank's failure.

### III. The FDIC Fails to Show that It Has Adequately Pleaded Claims against Champion and Anthony.

The FDIC fails to plead that Champion and Anthony were negligent, were grossly negligent, or breached their fiduciary duties in any category of conduct where they allege wrongdoing: oversight failure, (Opp. at 3-4); approval of loans that went bad, (*see id.* at 4-5); and ratification of certain compensation and dividends (*id.* at 5).

#### A. The Cases Cited by the FDIC are Factually Inapposite and Cannot Sustain a Gross Negligence Claim Against Champion and Anthony.

As an initial matter, the FDIC contends that courts "routinely" deny motions to dismiss in gross negligence cases. (Opp. at 8.) In addition to being decided under different pleading standards, as set forth in Saphir's Reply, the cases the FDIC cites are factually inapposite. In those cases, the banks at issue: established no loan policies and procedures; failed to obtain appraisals or other financial information before making loans; ignored regulatory criticisms; and/or violated governing law.[4]  (*Id.* at 8-9.)

---

[4] *See, e.g., Resolution Trust Corp. v. Franz*, 909 F. Supp. 1128 (N.D. Ill. 1995) (complaint alleged that: no defendant had experience in relevant lending areas; defendants ignored regulatory criticisms of programs as being inadequate and violating federal law; and at times defendants performed no independent underwriting or analyses of the mortgages); *Resolution*

By contrast, here the FDIC alleges facts that clearly differentiate this case from those authorities: (1) the Defendants had deep banking expertise (Compl. ¶¶ 7-12.);[5] (2) the Director Defendants received substantial information regarding the Bank's loans, including loan write-ups and loan grades prepared by credit analysts and loan officers (*id.* at ¶¶ 24-25); (3) there were policies and procedures in place for loan approval: credit analysts and loan officers analyzed potential loans, and provided loan write-ups and loan grades to the Loan Committee and then, if the Loan Committee gave its approval, to the Board of Directors (*id.*); (4) the Director Defendants hired an HCBI shareholder to review its loans (*id.* at ¶ 35); and (5) the Director Defendants, in 2008, commissioned "a substantive, independent loan review" of the CRE loan portfolio (*id.*).

The Complaint is also noteworthy in the allegations that it does <u>not</u> contain. There is no allegation that any Bank staff or director: (1) acted in bad faith; (2) engaged in fraudulent or illegal conduct; or (3) failed to consider information provided before making loans. Each case cited by the FDIC highlights the sort of conduct that—after

---

*Trust Co. v. Platt*, Case No. 92-cv-277-WDS, 1992 U.S. Dist LEXIS 21377 (S.D. Ill. Oct. 23, 1992) (complaint alleged that: board of directors established no written loan policies, procedures, standards, or practices for its CRE lending activities; neither directors nor staff reviewed or analyzed financial, credit, or market information before making loans; no one verified information provided by lead lenders and loan brokers or obtained prudent appraisal standards; and board and staff frequently relied on appraisals provided by the borrower or loan broker); *Resolution Trust. Corp. v. O'Connell*, Case No. 94 C 4186, 1996 U.S. Dist. LEXIS 3999 (N.D. Ill. Mar. 29, 1996) (complaint alleged that: bank had received regulatory criticism of its lending policies and practices, management, and board oversight; bank funded loans without receiving documentation, such as appraisals, written loan agreements, and/or credit reports; and directors engaged in improper conduct, including backdating documents, violating cease and desist order, and concealing information); *Resolution Trust Corp. v. Fortunato*, Case No. 94 C 2090, 1994 U.S. Dist. LEXIS 12326 (N.D. Ill. Aug. 31, 1994) (complaint alleged that directors failed to follow established procedures, violated federal regulations, and deliberately disregarded federal directives).

[5] Six defendants had significant experience as bank employees and/or corporate officers: Saphir, Fanning, Faydash, Hetler, Jelinek, and Moseley. (Compl. ¶¶ 7-12.) Champion and Anthony had experience as bank directors during the relevant time period: Champion joined the Heritage Board in 1988, (*id.* at ¶ 15), while Anthony joined the Board in 1990, (*id.* at ¶ 13). In addition, Fanning had more than two years of experience specifically in the area of CRE lending when the program was formally initiated. (*Id.* at ¶ 23.)

extensive discovery—the FDIC did not find at Heritage and did not allege here.[6]

### B. The FDIC's Director Oversight Failure Claims Should Be Dismissed, Because the Complaint Does Not Satisfy the *Caremark* Standard.

The standard established by *In re Caremark Int'l Inc. Derivative Litig*, 698 A.2d 959 (Del. 1996) for pleading director oversight liability is extraordinarily high, and the FDIC fails to meet it. (Mem. at 9.)[7] Moreover, despite its attempt to distinguish *Caremark* in order to lower its burden of showing director oversight liability, the FDIC fails to establish that *Caremark* does not apply.

#### 1. The Director Oversight Liability Claims Fail to Satisfy the *Caremark* Standard and Should be Dismissed.

The FDIC never contends that the allegations of its Complaint meet the *Caremark* standard. Nor could it. In *Sherman*, the First District rejected as the basis for a *Caremark* claim allegations that a company's auditing and reporting system failed to catch red flags that might have alerted the directors to concerns arising out of a business practice of engaging in contingent-commission agreements. *Sherman v. Ryan*, 392 Ill.App.3d 712, 728-29, 911 N.E.2d 378 (1st Dist. 2009). The court held that a *Caremark* claim requires that directors "utterly failed" to implement reporting systems or "consciously failed to monitor or oversee" the operation of this reporting system. *Id.* at 729. Here, as in *Sherman,* the Complaint makes plain that the Directors established

---

[6] The Complaint also alleges that regulators criticized the Bank for exceeding "supervisory" loan-to-value ratios, but notes that the Bank's CEO, Mr. Saphir, responded proactively to this criticism rather than ignoring it. (Compl. ¶ 30.)

[7] Compelling public policy reasons require applying a high standard to these claims: "Directors are not specialists like lawyers or doctors. . . . They are the general advisors of a business and if they faithfully give such ability as they have to their charge, it would not be lawful to hold them liable. Must a director guarantee that his judgment is good?" *Caremark*, 698 A.2d at 968 (quoting *Barnes v. Andrews*, 298 F. 614 (S.D.N.Y. 1924) (Hand, J.)); *see also In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 131 (Del. Ch. 2009) ("Oversight duties under Delaware law are not designed to subject directors, even expert directors, to *personal liability* for failure to predict the future and to properly evaluate business risk.").

a control and monitoring system for CRE lending involving written reports prepared by credit analysts, Loan Committee approval, and then, finally, Board of Director approval. (*See* Mem. at 10, quoting Compl. ¶¶ 24-32 & 34-35; *see also* Opp. at 3.) Like in *Sherman*, the FDIC's claim should be dismissed.

As to the remaining *Caremark* factors, the FDIC also never alleges that the Director Defendants acted in bad faith when they established the reporting system described above. Similarly, the FDIC never alleges that Champion and Anthony "<u>consciously</u> failed to monitor or oversee" the Bank's operations. (Mem. at 9, quoting *Sherman*, 392 Ill.App.3d at 729, 911 N.E.2d 378.) Accordingly, the FDIC fails to meet the pleading standards set forth in *Caremark*.[8]

### 2. The FDIC Fails to Establish that *Caremark* Does Not Govern its Director Oversight Liability Claims.

Apparently recognizing that it cannot establish liability under *Caremark*, the FDIC instead contends that *Caremark* is inapplicable. First, the FDIC suggests that a plaintiff need only satisfy *Caremark* when pleading a claim for breach of the fiduciary duty of loyalty and not when it has only pleaded a claim for breach of the fiduciary duty of care. (Opp. at 22.) This misconstrues fiduciary duty law.

To establish a director oversight liability claim, a plaintiff must plead a breach of the fiduciary duty of loyalty. In *Stone v. Ritter*, cited by the FDIC, the Delaware Supreme Court held that the *Caremark* standard for director oversight liability relies heavily on directors' responsibility to act in good faith, which is a part of the duty of loyalty but not the duty of care. 911 A.2d 362, 369 (Del. 2006). The *Stone* court

---

[8] Although the FDIC now contends that its Complaint alleges "affirmative misconduct" by Champion and Anthony, (*see* Opp. at 24), as set forth below, the Complaint does not contain allegations of such affirmative misconduct.

concluded that "because a showing of bad faith conduct . . . is essential to establish director oversight liability, the fiduciary duty violated by that conduct is the duty of loyalty." *Id.* at 370. Regardless of whether the FDIC has elsewhere pleaded a breach of the fiduciary duty of care, its director oversight claims are necessarily duty of loyalty claims and cannot survive a motion to dismiss because they do not satisfy *Caremark*.[9]

Second, citing no legal authority, the FDIC argues that *Caremark* only applies to the demand futility requirement of derivative claims. (Opp. at 23-24.)[10] In the context of director oversight claims, however, determining whether demand in a derivative lawsuit is futile and therefore excused requires determining whether the directors "face a substantial likelihood of personal liability." *Khanna v. McMinn*, C.A. No. 20545-NC, 2006 Del. Ch. LEXIS 86 at *20 (Del. Ch. May 9, 2006).[11] In other words, a court necessarily addresses the merits of claims against directors to determine whether demand was excused, rendering the legal standard applicable in this case. Similarly here (and as in *Cement-Lock*), the *Caremark* standard applies to the merits of the FDIC's claims against the directors.[12]

---

[9] As set forth at Section III.A., the gross negligence claims also fail on other grounds.

[10] Although Champion and Anthony agree that the heightened pleading standard required for demonstrating demand futility pursuant to Rule 23.1 does not apply to the FDIC's claims, Champion and Anthony note that, under the Rule 8 pleading standard, conclusory allegations and their unwarranted inferences are not sufficient to defeat a motion to dismiss. *Northern Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995); *Oakland Cnty. Emps. Ret. Sys. v. Massaro*, 736 F. Supp. 2d 1181, 1187 (N.D. Ill. 2010) (dismissing breach of fiduciary duty claims: "Even under Rule 8, plaintiffs must plead some factual basis to support their theory of liability.").

[11] *See also In re Abbott Labs. Derivative S'holders Litig.*, 325 F.3d 795 at 807 ("the entire question of demand futility is inextricably bound to issues of business judgment and the standards of that doctrine's applicability") (citation omitted).

[12] The FDIC suggests that "every…case Anthony and Champion cite in support of their *Caremark* argument involved derivative claims, with plaintiffs trying to show demand was excused," because of director oversight failures. (*Id.* at 23 n.20.) This is simply not true. In *Cement-Lock v. Gas Tech. Inst.*, this Court applied *Caremark* in deciding part of a motion for summary judgment on the merits of plaintiffs' breach of fiduciary duty claims, which did not involve consideration of the demand futility requirement or require the plaintiffs to plead claims

Moreover, it makes no sense to apply a lesser legal standard simply because a lawsuit is brought by the FDIC, as opposed to by shareholders in a derivative lawsuit. The fiduciary duties of outside directors do not rise or fall based on who is the plaintiff. Thus, the FDIC's claims based on the alleged failure to establish adequate procedures for loan underwriting and monitoring should be dismissed.

### C. The FDIC Has Not Pleaded Claims against Champion and Anthony That Survive the Business Judgment Rule.

The FDIC next argues that the allegations about the CRE Lending Program suggest that the Director Defendants are unprotected by the business judgment rule, because they implemented, oversaw, and approved the CRE Lending Program and approved loans. The FDIC fails, however, to explain why the business judgment rule does not apply to the outside directors.

The business judgment rule shields Champion and Anthony from liability for honest errors or mistakes of judgment. (*See* Mem. at 9, citing *Stamp v. Touche Ross & Co.*, 263 Ill.App.3d 1010, 1015, 636 N.E.2d 616 (1st Dist. 1993).) To overcome the business judgment rule, a complaint must allege bad faith, fraud, illegality or gross overreaching. (*Id.* at 9.) The FDIC's Complaint does not contain such allegations.[13]

---

with particularity. 523 F. Supp. 2d 827, 842 (N.D. Ill. 2007). Although *Caremark* was a derivative lawsuit, the court did not consider demand futility but, rather, decided a motion to approve a settlement as fair and reasonable, which required it to "assess the strengths and weaknesses of the claims asserted." *Caremark*, 698 A.2d at 960-61.

[13] The FDIC contends that this Court cannot decide at the motion to dismiss phase whether the business judgment rule applies. (Opp. at 24-26.) But federal courts regularly grant motions to dismiss where complaints fail to allege facts to rebut the business judgment rule. *See, e.g., Geltzer v. Altman (In re 1st Rochdale Coop. Group, Ltd.)*, Case No. 07 Civ. 7852 (DC), 2008 U.S. Dist. LEXIS 4966 at *3 (S.D.N.Y. Jan. 17, 2008) (granting motion to dismiss: "argument that they [directors] are not protected by the business judgment rule is not plausible and therefore fails as a matter of law"); *Resolution Trust Corp. v. Hovnanian*, Case No. 94-450 (HLS), 1994 U.S. Dist. LEXIS 19359 at *6 (D.N.J. Oct. 11, 1994) (dismissing negligence claims: whether "business judgment rule precludes claims of simple negligence is a question of law that can properly be addressed on a motion to dismiss.").

### 1. The FDIC Has No Claim for Approval of Loans That Subsequently Defaulted.

The FDIC fails to plead facts that would place the Director Defendants' approval of the CRE loans outside the business judgment rule. (Mem. at 12.)[14] The FDIC contends, first, that the Director Defendants did not exercise due care, in that they lacked sufficient information to make business judgments and therefore are not entitled to the protections of the business judgment rule. (Opp. at 27-28.) But the FDIC cites no apposite case law for this position. In two of the cases the FDIC cites—*Resolution Trust Co. v. Platt*, Case No. 92-cv-277-WDS, 1992 U.S. Dist LEXIS 21377 (S.D. Ill. Oct. 23, 1992) and *Resolution Trust Corp. v. Lucas*, Case No. 92-1317, 1993 U.S. Dist. LEXIS 9892 (C.D. Ill. Mar. 25, 1993)—the very excerpts quoted in the FDIC's brief make explicit that the boards of directors in those cases had no banking expertise, established no written procedures or policies, and performed no supervision whatsoever. (*See* Opp. at 27-28.) The FDIC's assertion that its "allegations about the CRE Lending Program are just like those in *Platt*," (Opp. at 30) is overstated, to say the least.

Here, as set forth above, the Complaint makes clear that the Defendants had deep banking expertise. (Compl. ¶¶ 7-12.) The FDIC also urges that the Director Defendants failed to obtain adequate information about the Bank's CRE Lending Program, relying on *Davis v. Dyson,* 387 Ill App. 3d 676, 679, 900 N.E.2d 698, (1st Dist. 2008). (Opp. at 28.) There, a condominium property manager embezzled from the condominium association. The complaint alleged that the directors never reviewed

---

[14] Even if the Complaint contained allegations that the Director Defendants approved loans that did not meet the Bank's criteria or that they approved loans that did not get repaid, which it did not, this would be insufficient to state a claim for negligence. (Mot. at 12, citing *First Nat'l Bank of Lincolnwood v. Keller*, 318 F. Supp. 339, 347-48 (N.D. Ill. 1970).) The public policy reason for this rule is to avoid holding bank directors personally liable for every loss sustained by the bank, thereby effectively rendering them the bank's insurers. (*Id.*)

bank statements; never performed a financial review or audit; did not properly supervise financial dealings between the property manager and the association; and failed to obtain adequate insurance or advice of counsel. *Id.* at 679-80. The *Davis* court found that the directors "failed to obtain the necessary information to make a rational business judgment" regarding proper safeguards and exercised "inexcusable unawareness or inattention." *Id.* at 696.

By contrast, the FDIC alleges that the Defendants in this case gathered substantial information regarding the Bank's loans. The Bank used credit analysts and loan officers to analyze potential loans and provide loan write-ups and loan grades to the Loan Committee and then, if the Loan Committee gave its approval, to the Board of Directors. (Compl. ¶¶ 24-28.) The board of directors hired an HCBI shareholder to perform a document review of its loans and, in 2008, commissioned "a substantive, independent loan review to identify weaknesses in its CRE loan portfolio." (*Id.* at ¶ 35.) The FDIC never disputes that, as part of this process, it was proper for Champion and Anthony, as outside directors, to rely on documents prepared by the Bank and its officers and directors. (*See* Mem. at 12-13, citing *Ohlendorf*, 230 Ill. App. 427, 1923 WL 3327 (2d Dist. 1923); *Said*, 812 F. Supp. at 1269.) Furthermore, the FDIC never alleges that the process was not established in good faith or (as was the case in *Davis*) that the directors ignored information provided to them.

The FDIC critiques the Bank's loan approval and monitoring process, suggesting that, had the credit analysts been more experienced and better trained (by some undefined standard) and had they evaluated additional information regarding the loans, and had reported to someone other than Fanning (though it is unclear to whom they

12

should have reported or why), the Board would have had more information available to them. (Opp. at 28-29.) Even accepting the FDIC's characterizations as true, they do not satisfy the legal test for pleading lack of due care established in *Davis* or any other case the FDIC cites. The FDIC does not allege that Champion and Anthony had reason to believe that the Bank's loan review process in place was not adequate and effective, much less that Champion and Anthony acted in bad faith, fraudulently, illegally, or with gross overreaching. *See Stamp*, 263 Ill. App. 3d at 1015, 636 N.E.2d 616.[15]

Additionally, the FDIC's criticism of the loan approval process improperly attempts to hold Champion and Anthony liable based on hindsight. (*See* Mem. at 13-15). Courts consistently reject such attempts, as directors cannot be expected to foresee the future. (Mem. at 13-14 (collecting cases).) The mere fact that the real estate bubble burst—affecting numerous investors of all sizes and sophistication levels across the country—does not establish director liability.[16]

### 2. The FDIC Has No Claim for Approval of Dividends and Incentive Payments.

The FDIC's claims against Champion and Anthony related to approval of dividend and incentive payments also fail. First, the Complaint does not allege that Champion and Anthony voted to approve any such payments. (Mem. at 16; *supra* at

---

[15] The FDIC rejects any reliance on *Stamp*, suggesting that, in that case, the complaint contained no allegations that the Defendants failed to exercise due care. (Opp. at 30.) This is an important admission, as the *Stamp* complaint charged that the defendants failed to develop adequate internal underwriting procedures controls, failed to oversee the performance of managing general agents, wrongfully delegated responsibility, failed to properly manage and supervise, and paid excessive commissions to managing general agents. 263 Ill. App. 3d at 1012-13, 1017, 636 N.E.2d 616. The allegations are virtually identical to those made by the FDIC in this case.

[16] *See In re Citigroup*, 964 A.2d at 128, 131 (rejecting as basis for directors' personal liability claims that directors knew of deterioration in subprime mortgage market or that the market could decline further and holding that directors are not liable "for failure to predict the future and to properly evaluate business risk").

13

Section I.) Absent such allegations, there is no basis for the FDIC's claims against Champion and Anthony related to approval of dividends and incentive payments.

Second, *Massaro* establishes the standard governing claims for corporate waste, or incentive payments: a plaintiff must show that "no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration" for executive compensation paid. *Oakland Cnty. Emps. Ret. Sys. v. Massaro*, 736 F. Supp. 2d 1181, 1187-88 (N.D. Ill. 2010) (citation omitted). While the FDIC attempts to distinguish *Massaro*, it cannot escape the legal standard it sets forth: claims that directors are liable for "corporate waste" based on executive compensation survive only where the conduct is "unconscionable" and consists of "irrationally squander[ing]" corporate assets. *Id.* at 1188; *see also* Mem. at 16, citing *Int'l Ins. Co. v. Johns*, 874 F.2d 1447, 1461 (11th Cir. 1989). The Complaint contains no such allegations.

With respect to dividend payments, arguing that governing law holds a director liable for approval of payments absent exercise of due care, the FDIC attempts to distinguish the cases Champion and Anthony cited on two grounds: (1) they involved corporations; and (2) the executive compensation awarded in those cases "did not imperil the company's survival." (Opp. at 35.) The FDIC does not, however, explain the significance of either distinction. Furthermore, the Complaint never alleges that the payments made imperiled the Bank's survival, nor do the cases at issue state that the executive compensation challenged there did not threaten the company's survival.

Furthermore, the FDIC alleges that the Director Defendants, including Champion and Anthony, approved these payments in reliance on the advice of the Bank's CFO and financial statements. (Compl. ¶¶ 43-44.) A Board's reliance on the advice of its

14

CFO and Board Member is appropriate and is protected by the business judgment rule. (Mem. at 18.) The FDIC suggests that the Director Defendants were HCBI shareholders and, thus, stood to personally benefit from the dividend payments made. (Opp. at 24.) As set forth above, *see supra* at n.1, any personal benefit to Champion and Anthony was so negligible as to be immaterial. Moreover, as this court recognized in *Fait v. Hummel*, Case No. 01 C 2771, 2002 U.S. Dist. LEXIS 4963, at *16-17 (N.D. Ill. Mar. 21, 2002), the business judgment rule protects a director's action that has the "collateral effect" of benefiting the director. *Id.*[17] That Champion and Anthony might have received some minimal benefit does not render the business judgment rule inapplicable.

Third, the Director Defendants had discretion to approve executive compensation and dividend payments. (Mem. at 17-18.) The FDIC argues that the cases Champion and Anthony cite are inapposite because they involved refusals to pay dividends and "retaining cash almost never harms a corporation." (Opp. at 32.) The FDIC apparently suggests that one legal standard should govern decisions to make payments, while a different standard applies to decisions not to do so. This is simply not plausible.

---

[17] *See also Treco, Inc. v. Land of Lincoln Sav. & Loan*, 749 F.2d 374, 378-379 (7th Cir. 1984) ("courts generally have determined that the business judgment rule continues to apply to insulate directors' actions in challenge-to-control contexts, despite the directors' apparent self-interest, unless self-interest was the 'sole or primary purpose' for the directors' resistance.").

15

**CONCLUSION**

For the foregoing reasons and those set forth in the Motion to Dismiss and Memorandum, as well as the relevant portions of Saphir's Motion to Dismiss (the Factual Background and Sections I, II, and III of the Argument) and Saphir's Reply, Defendants Stephen Anthony and James K. Champion respectfully request that this Court grant their Motion to Dismiss under Rule 12(b)(6).

Dated: April 29, 2011

Respectfully submitted,

| /s/ Aaron H. Stanton | /s/ Sigal P. Mandelker |
|---|---|
| Aaron H. Stanton (IL Bar No. 6244251)<br>Burke, Warren, MacKay & Serritella, P.C.<br>330 N. Wabash<br>22nd Floor<br>Chicago, IL 60611<br>Telephone: (312) 840-7078<br>Facsimile: (312) 840-7900<br><br>*Counsel for Defendant Stephen Anthony* | Sigal P. Mandelker (*pro hac vice*)<br>Proskauer Rose LLP<br>Eleven Times Square<br>New York, NY 10036<br>Telephone: (212) 969-3360<br>Facsimile: (212) 969-2900<br><br>*- and -*<br><br>Steven R. Gilford (IL Bar No. 3121730)<br>Catherine J. Spector (IL Bar No. 6287459)<br>Proskauer Rose LLP<br>Three First National Plaza<br>70 W. Madison St., Ste. 3800<br>Chicago, IL 60606<br>Telephone: (312) 962-3550<br>Facsimile: (312) 962-3551<br><br>*Counsel for Defendant James K. Champion* |

**CERTIFICATE OF SERVICE**

I do hereby certify that I have caused a true and correct copy of the foregoing to be served to the following attorneys, today April 29, 2011, by operation of the Court's CM/ECF electronic filing system:

Susan Valentine
Robinson Curley & Clayton, P.C.
300 South Wacker Drive, Suite 1700
Chicago, IL 60606
312 663-3100
svalentine@robinsoncurley.com
*Attorneys for Federal Deposit Insurance Corporation, as Receiver of Heritage Community Bank*

Thomas G. Gardiner
Gardiner Koch Weisberg & Wrona
53 West Jackson Boulevard, Suite 950
Chicago, IL 60604
(312) 362-0000
tgardiner@gkw-law.com
*Attorneys for Stephen L. Faydash*

Lawrence A. Stein
Huck Bouma PC
1755 South Naperville Road
Wheaton, IL 60187-8132
(630) 221-1755
Fax: (630) 221-1756
lstein@huckbouma.com
*Attorneys for Thomas Jelinek*

Aaron H. Stanton
Burke, Warren, MacKay & Serritella, P.C.
330 N. Wabash, 22nd Floor
Chicago, IL 60611
Telephone: (312) 840-7078
Facsimile: (312) 840-7900
astanton@burkelaw.com
*Attorneys for Stephen Anthony*
William D. Dallas
Regas, Frezados, Harp & Dallas

John M. George
Nancy Anne Temple
Katten & Temple LLC
542 South Dearborn Street, #1060
Chicago, IL 60603
(312) 663-0800
jgeorge@kattentemple.com
ntemple@kattentemplelaw.com
*Attorneys for John M. Saphir*

John J. Duffy
Donohue, Brown, Mathewson & Smyth
140 South Dearborn Street, Suite 700
Chicago, IL 60603
(312) 422-0900
john.duffy@dbmslaw.com
*Attorneys for Patrick G. Fanning*

Matthew F Tibble
Pretzel & Stouffer, Chtd.
One South Wacker Drive, Suite 2500
Chicago, IL 60606-4673
(312) 346-1973
mtibble@pretzel-stouffer.com
*Attorneys for William E. Hetler*

Anne M Abrell
Casale, Woodward & Buls, LLP
9223 Broadway, Suite A
Merrillville, IN 46410
(219) 736-9990
aabrell@cwblawfirm.com
*Attorneys for Lori A. Moseley*

Brian Kevin McBrearty
McBrearty, Hart & Kelly

| | |
|---|---|
| 111 West Washington Street, Suite 1525<br>Chicago, IL 60602<br>(312) 236-4400<br>wdd@rfd-law.com<br>*Attorneys for Jerry C. Brucer* | 222 South Central Avenue, Suite 200<br>St. Louis, MO 63105<br>(314) 725-1227<br>mcbrearty@mcbreartylaw.com<br>*Attorneys for Mary C. Mills* |

William Scott Porterfield
Sarah B. Waxman
Barack Ferrazzano Kirschbaum & Nagelberg LLP
200 W. Madison Street, Suite 3900
Chicago, IL 60606
(312) 984-3100
Fax: (312) 984-3150
scott.porterfield@bfkn.com
sarah.waxman@bfkn.com
*Attorneys for Andrew B. Nathan*

By:   */s/ Sigal P. Mandelker*