**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of Heritage Community Bank,**

**Plaintiff,**

**v.**

**JOHN M. SAPHIR; PATRICK G. FANNING; STEPHEN L. FAYDASH; WILLIAM E. HETLER; THOMAS JELINEK; LORI A. MOSELEY; STEPHEN ANTHONY; JERRY C. BRUCER; JAMES K. CHAMPION; ANDREW B. NATHAN; and MARY C. MILLS,**

**Defendants.**

**No. 10 C 7009**

**Judge Rebecca R. Pallmeyer**

**MEMORANDUM OPINION AND ORDER**

Plaintiff, the Federal Deposit Insurance Corporation ("FDIC" or "Plaintiff"), as Receiver for Heritage Community Bank ("Heritage"), filed a nine-count complaint against eleven former directors and officers of Heritage. Named Defendants include John M. Saphir, a former President, Chief Executive Officer, and Chairman of the Board of Directors for Heritage and its holding company, Heritage Community Bancorporation, Inc. ("HCBI"); Patrick G. Fanning, a former Senior Vice President, Chief Lending Officer, and President of Heritage, and a member of the Board of Directors of Heritage and HCBI; Stephen L. Faydash, a former Chief Financial Officer ("CFO") for Heritage and a 6 percent shareholder of HCBI; William E. Hetler, a former Senior Vice President of Lending, a compliance officer for Heritage's commercial real estate ("CRE") lending program, and a member of Heritage's Loan Committee; Thomas Jelinek, a former CRE lending officer and member of the Loan Committee; Lori A. Moseley, a former Vice President of Loan Operations and member of the Loan Committee; Stephen Anthony, a former member of Heritage's Board of Directors, Chairman of the Audit Committee, and a .489 percent shareholder of HCBI; Jerry C. Brucer, a former member of the Heritage and HCBI Board of Directors and a 13.435 percent shareholder in HCBI; James K.

Champion, a former member of the Heritage Board of Directors and a 1.285 percent shareholder in HCBI; Andrew B. Nathan, a former member of the Heritage Board of Directors and the Loan Committee, and a 9.331 percent shareholder in HCBI (personally and through trusts controlled by his family); and Mary C. Mills, a former member of the Heritage Board of Directors and a 12.913 percent shareholder of HCBI (personally and through trusts controlled by her family). The FDIC's complaint divides these Defendants into three categories: (1) Director Defendants (Saphir, Fanning, Nathan, Anthony, Brucer, Champion, and Mills); (2) Loan Committee Defendants (Saphir, Fanning, Nathan, Hetler, Jelinek, and Moseley); and (3) Defendant Faydash. The FDIC alleges claims for gross negligence, negligence, and breach of fiduciary duty against each category of Defendants. Counts I-III are directed against the Director Defendants. Counts IV-VI are directed against the Loan Committee Defendants. Counts VII-IX are directed against Defendant Faydash.

Before the court are motions to dismiss filed by Defendants Nathan [58], Saphir [61], Brucer [62], Faydash [81], Mills [76], Champion and Anthony [75], and Hetler, Moseley, and Jelinek [57]. Fanning joined in Saphir's motion to dismiss. Saphir also filed a motion for leave to file a document under seal [72]. All eleven Defendants seek dismissal of the claims against them pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Several Defendants have also moved pursuant to FED. R. CIV. P. 12(f) for an order striking the negligence or breach of fiduciary duty claims as redundant.

**FACTS**

Heritage was founded in 1969, and has its headquarters in Glenwood, Illinois. (Compl. ¶ 21.) The Illinois Department of Financial and Professional Regulation ordered Heritage closed on February 27, 2009. (*Id*. ¶ 6.) Thereafter, the FDIC was appointed Receiver for Heritage. *Id*. According to the complaint, the FDIC is seeking to recover at least $20 million it claims Heritage lost due to the Defendants' failure to properly manage and supervise Heritage and its CRE lending program. (*Id*. ¶ 5.) That loss figure includes more than $8.5 million in losses on CRE lending and

$11.075 million in allegedly unjustified dividend payments to HCBI and incentive compensation payments to Defendants Saphir, Fanning, Faydash, and Jelinek. (*Id.* ¶ 5, 45.) Heritage began its CRE lending program in the early 2000s. According to the FDIC, from the outset of the program, the "Defendants failed to protect [Heritage] from the substantial inherent risks of large-scale CRE lending." (*Id*. ¶ 2.) Heritage "routinely financed CRE projects, . . . without any meaningful analysis of their economic viability" and without adequate appraisals. (*Id*.) "Defendants failed to structure the CRE Lending Program to let credit analysts do their jobs." (*Id.)* According to Plaintiff, Defendant Fanning personally originated most of Heritage's CRE loans. *(Id*.)

The FDIC alleges that "Defendants failed to preserve [Heritage's] capital, and failed to provide sufficient reserves to absorb losses . . . when poorly-underwritten CRE loans" did not perform. (*Id*. ¶ 3.) Instead, Defendants allegedly depleted Heritage's capital by "making millions of dollars in dividend payments to [HCBI] and paying generous incentive awards to senior management." (*Id*.) By December 1, 2006, Plaintiff asserts, each Defendant "knew that Heritage's CRE lending program was failing and threatening [Heritage's] viability," yet Defendants failed to take adequate steps to correct the mounting problems. (*Id*. ¶ 4.)

Heritage's Board of Directors was responsible for "establishing appropriate risk limits, monitoring exposure, and evaluating the effectiveness of [Heritage's] efforts to manage and control risk." (*Id*. ¶ 22.) The FDIC alleges that the Director Defendants knew or should have known that "CRE lending is a specialized field with unique risks that require thorough understanding and close management." (*Id*.) With the exception of Fanning, however, the Director Defendants "had virtually no experience in CRE lending and little or no idea of the risks inherent in [CRE] loans." (*Id*. ¶ 23.) The Director Defendants nevertheless "did not consult anyone with expertise as to how to establish, structure, or operate" a CRE lending program and did not "implement the most basic controls to mitigate the inherent risks in CRE loans." (*Id*.)

At Heritage, credit analysts prepared loan "write-ups" for potential CRE loans. (*Id*. ¶ 24.)

Those loan write-ups had to be approved by the Loan Committee and then by the Board of Directors. (*Id*.) If credit analysts were not available to analyze a potential CRE loan and prepare write-ups, Heritage loan officers themselves would prepare write-ups for loans they originated. (*Id*. ¶ 25.) Some of Heritage's loan write-ups lacked a "global analysis" of potential borrowers' and/or guarantors' creditworthiness, or any verification of the information in the write-ups. *Id*.

The Director Defendants also allegedly "failed to segregate the loan administration functions, including credit analysis, from the Bank's loan origination functions." (*Id*. ¶ 26.) In other words, Heritage employees, including Fanning, who were responsible for generating or "selling" a loan, were also allowed to prepare the loan write-up. (*Id*.) The incentive awards Heritage offered for loan origination provided Fanning and others with a motive to ensure that the Loan Committee and Board of Directors approved the loans they originated. (*Id*.) Plaintiff alleges that Defendant Fanning originated most of the problematic CRE loans at issue in this case, and, because he was Heritage's principal CRE loan originator, its President, and a member of the Loan Committee and Board of Directors, his loans only received cursory reviews. (*Id*. ¶ 27.)

Plaintiff alleges that the Defendants engaged in or allowed a host of sloppy practices relating to the CRE loans. For example, the principal source of funds for repayment of a number of Heritage's CRE loans was the sale of the completed commercial buildings. (*Id*. ¶ 28.) Heritage nevertheless often approved the CRE loans without verified pre-sales of the completed commercial units. (*Id*.) Heritage also extended CRE loans with excessive loan-to-value ("LTV") ratios. (*Id*. ¶ 29.) Heritage's loan policy provided that CRE loans were not to exceed 80 percent of the value of the property and, for projects that included land development, that limit was reduced to 75 percent. (*Id*.) Heritage's CRE loans routinely exceeded those policy limits, a matter that drew criticism from the Illinois Department of Financial and Professional Regulation as early as 2006. (*Id*. ¶¶ 29-30.)

Heritage's loan policy and regulatory standards required that properties be appraised before

CRE loans were approved, "but Heritage made CRE loans on projects with patently deficient appraisals, or [with] appraisals that did not support the feasibility of the [proposed] projects." (*Id*. ¶ 31.) Regulators repeatedly criticized Heritage for non-compliance with regulatory standards relating to appraisals. (*Id*.) Then, once the CRE loans were made, the Loan Committee and Director Defendants failed to implement an effective system to monitor those loans and to determine whether projects continued to be feasible as originally underwritten. (*Id*. ¶ 33.) The Board of Directors further failed to timely commission any independent review of Heritage's CRE loans to determine weaknesses in the CRE loan portfolio. (*Id*. ¶ 35.) All Defendants "failed to heed regulatory criticism warning them to control [Heritage's] CRE lending and [failed to] set appropriate limits to avoid over-concentration" of loans to CRE projects. (*Id*. ¶ 38.)

Defendants' practices enriched HCBI and certain of the Defendants themselves, at the expense of the lender. Thus, Plaintiff alleges that the Director Defendants and Faydash used faulty profitability calculations to justify substantial dividend payments to HCBI and generous incentive compensations payments to Saphir, Fanning, and Faydash. (*Id*.) The Director Defendants and Faydash also failed to maintain sufficient reserves, known as "Allowance for Loan and Lease Losses" or "ALLL," on CRE loans. (*Id*. ¶ 37.) As a result, Heritage's financial condition was impaired, and it was not able to absorb and withstand significant losses on CRE loans when defaults on high-risk CRE loans occurred. (*Id*. ¶ 38.)

After December 1, 2006, when they should have increased capital and ALLL reserves to compensate for failing CRE loans, the Director Defendants instead continued making dividend and incentive compensation payments. (*Id*. ¶ 39.) From December 1, 2006 to February 27, 2009, the Loan Committee and the Board of Directors approved an additional $86.3 million in CRE-related loans. (*Id*. ¶ 40.) The FDIC's complaint identifies ten approved CRE loans that account for more than $8.5 million of Heritage's losses. (*Id.*) One example includes a $3.35 million CRE loan made to Milovan Vlaskovic and approved by the Loan Committee and later by the Board of Directors.

(*Id*. ¶ 41.) That loan was to refinance a land acquisition and fund conversion of an eighteen-unit building into condominiums. (*Id.*) The loan had a 95 percent LTV ratio, and an appraisal concluded that the project was not financially feasible and had no pre-sales. (*Id*.) To date, losses on that loan exceed $1.5 million. (*Id*.)

Another example cited by Plaintiff is a $4.79 million CRE loan made to 4518 N. Kedzie LLC. (*Id*. ¶ 42.) The loan had an 80% LTV ratio, and was approved to finance construction of residential units and retail stores. (*Id*.) The loan write-up relied on six pre-sales of property that bank examiners later found "effectively invalid." The write-up also made reference to "good market conditions in the subject area [Chicago's Albany Park neighborhood]" despite what Plaintiff calls "mounting evidence that the Chicago condominium market was saturated and values were declining." (*Id*.) The losses on that loan exceed $2.5 million. (*Id*.)

## DISCUSSION

### A. Motion for Leave to File a Document Under Seal

Before turning to the motions to dismiss, the court addresses Defendant Saphir's motion for leave to file a report of examination of Heritage Community Bank dated June 30, 2006 under seal. It is undisputed that this report contains confidential information under Section 48.3 of the Illinois Banking Act, 205 ILCS 5/48. If the court were to determine that the report is relevant and appropriately considered at this stage, it might well permit filing under seal. Saphir contends that the report is critical to his motion to dismiss because it refutes the FDIC's allegations that the Director Defendants should have known about the problems with Heritage's CRE loan portfolio by December 1, 2006. Factual determinations as to what the Director Defendants knew or should have known is premature at this stage, however. *See Homeyer v. Stanley Tulchin Assoc., Inc.*, 91 F.3d 959, 962 (7th Cir. 1996). Although Mr. Saphir is free to renew his request at summary judgment or trial, the court declines to consider the report at this stage and denies without prejudice the motion for leave to file under seal .

**B. Rule 12(b)(6) Standard**

In ruling on a Rule 12(b)(6) motion to dismiss, the court treats all well-pleaded allegations as true, and draws all reasonable factual inferences in the FDIC's favor. *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009). Under Rule 8(a), the complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." The factual allegations must be sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009).

**C. Business Judgment Rule and Illinois Banking Act, 205 ILCS 5/39**

Defendants Saphir, Fanning, Nathan, Champion, Anthony, Mills, Faydash and Brucer urge the court to dismiss the negligence and breach of fiduciary duty claims against them, with prejudice, as barred by the Illinois "business judgment" rule. (*See* Saphir Br. [69] at 17-18; Champion and Anthony Br. [77] at 8-9; Faydash Br. [82] at 13-15; Mills Br. [77] at 3; Brucer Br. [63] at 7-9.) All of those Defendants, except Brucer, also urge the court to dismiss the negligence and breach of fiduciary duty claims as barred by Heritage's by-laws and by the Illinois Banking Act, 205 ILCS 5/39. (*See* Saphir Br. at 8-9; Champion and Anthony Br. at 4; Faydash Br. at 15; Mills Br. at 3.)

"The business judgment rule is a *defense*." *Alliant Energy Corp. v. Bie*, 277 F.3d 916, 918 (7th Cir. 2002). Defendants' reliance on the Illinois Banking Act and the contents of Heritage's by-laws are also affirmative defenses. Certain of the Defendants have noted the FDIC's failure to incorporate the by-laws in the complaint, but "pleadings need not anticipate or attempt to circumvent affirmative defenses." *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010) (citing *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003)). Nor does an affirmative defense "justify dismissal under 12(b)(6)." *Doe*, 347 F.3d at 657. Accordingly, at this stage the court overrules Defendants' objections based on the business judgment rule, the Illinois Banking Act, and the

contents of Heritage's by-laws.[1]

Defendants suggest that *Iqbal* changes this standard and authorizes consideration of affirmative defenses in Rule 12(b)(6) ruling. The court disagrees. *Iqbal* involved a claim of qualified immunity, which is not merely an affirmative defense, but an "entitlement not to stand trial or face the other burdens of litigation." *Id*. at 1946 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). If properly asserted, qualified immunity can render a defendant immune from the burdens of litigation, so courts consider its application at the motion to dismiss stage. For other affirmative defenses, including those at issue here, the appropriate mechanism for consideration is a motion for judgment on the pleadings or for summary judgment.

**D. Allegations Do Not Lead to Plausible Claim for Relief**

The remainder of Defendants' arguments in support of their motions to dismiss address the merits of the FDIC's claims. Defendants contend that the FDIC has not sufficiently stated claims for gross negligence, negligence, or a breach of fiduciary duty. Without citing to any supporting case law, Defendants suggest that the FDIC should be held to a higher pleading standard because it conducted significant pre-suit discovery. According to Defendants Anthony and Champion, the FDIC conducted eleven depositions and served the Defendants and Heritage's auditors and lawyers with document subpoenas. The court presumes that this pre-complaint discovery will streamline the discovery process in this case, but finds no support for the notion that it somehow elevates the FDIC's pleading standard.

That standard requires only that Defendants be notified of the claims against them and the plausible grounds on which those claims rest. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). The court is comfortable that the standard has been met here. Defendants challenge the FDIC's conclusion that their actions were negligent (grossly or otherwise) or

[1] Defendants remain free to file an answer asserting these affirmative defenses and then filing a Rule 12(c) motion for judgment on the pleadings. *Bausch*, 630 F.3d at 561-62.

constituted a breach of fiduciary duty, but they cannot plausibly suggest that they do not understand the allegations against them. With respect, the court observes that this is not a complex financial derivatives, tax fraud, or antitrust case. In a straightforward case alleging negligence and breach of fiduciary duty, like this one, the Supreme Court's recent cases do not raise the pleading bar beyond what Plaintiff FDIC has alleged. *Cf. Swanson*, 614 F.3d at 404.

Section 1821(k) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") provides that officers and directors of financial institutions can be held personally liable for loss or damage to the institution caused by the officer or director's "gross negligence" as defined by applicable state law. 12 U.S.C.A. §1821(k). Illinois law defines gross negligence as "very great negligence," but something less than willful, wanton, and reckless conduct. *FDIC v. Gravee*, 966 F. Supp. 622, 636 (N.D. Ill. 1997) (citation and quotation omitted).

The elements of the FDIC's gross negligence, negligence and breach of fiduciary duty claims are similar. It is undisputed that in order to state valid claims, the FDIC must allege duty, breach, proximate cause, and damages. *Gravee*, 966 F. Supp. at 636 (gross negligence); *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009) (negligence); *DeGeer v. Gillis*, 707 F. Supp. 2d 784, 795 (N.D. Ill. 2010) (breach of fiduciary duty). The standard of care applicable to the Defendants in this case "is that which ordinarily prudent and diligent persons would exercise under similar circumstances." *FDIC v. Bierman*, 2 F.3d 1424, 1427 (7th Cir. 1993). "This standard requires that the court review all of the circumstances of the particular case." *Id*.

In order to allege causation, the FDIC must allege that each Defendant's act or omission proximately caused Heritage's losses. *Bierman*, 2 F.3d at 1434. Defendants' acts or omissions need not "be the sole cause" of the bank's losses, however; instead "[they] need only be a substantial factor in producing the injury if the injury [was] reasonably foreseeable at the time of the wrongful act." *Id*.

As to the Director Defendants, the FDIC contends that they had a duty to Heritage to

conduct its business with safe and sound lending practices. Additional duties included "establishing and enforcing lending policies, including limits on CRE concentrations and limits on speculative and/or high-LTV CRE projects"; "establishing sufficient reserves for loan losses and maintaining adequate capital . . . "; ensuring that Heritage had capable personnel administering the CRE lending program; complying with regulatory standards; and correcting deficiencies identified by federal bank examiners. (Compl. ¶ 49.) The Director Defendants allegedly breached those duties by failing to adequately implement and supervise the CRE program and by voting to approve one or more of the 10 specific CRE loans identified in the complaint. (*Id.* ¶¶ 50-51.) They also breached their duties by failing to increase Heritage's reserves and by approving large dividend and incentive payments that depleted Heritage's capital. (*Id.* ¶ 52.) The FDIC claims that these breaches constituted gross negligence, negligence, and a breach of the fiduciary duty of care, and caused Heritage to lose more than $20 million.

The FDIC contends that the Loan Committee Defendants are liable for the same three causes of action because they had a duty to Heritage to: (1) "enforce prudent lending policies," including limits on the CRE program; (2) "make informed decisions about loans they approved, . . . consistent with sound underwriting standards;" and (3) ensure that loans they had approved were properly monitored and that loan records made timely note of "non-performing credits and credit losses." (Compl. ¶ 71.) The Loan Committee Defendants allegedly breached those duties by operating the CRE program in an "unsafe and unsound manner" and by approving loans without sufficient information regarding the borrowers' creditworthiness and the loans' viability. (*Id.* ¶ 72.) The FDIC contends that by breaching those duties, the Loan Committee Defendants caused $8.5 million in losses on nonperforming CRE loans, and are liable for gross negligence, negligence, and breach of fiduciary duty.

Finally, the FDIC contends that Defendant Faydash, as Heritage's CFO, had a "duty to use reasonable care, skill, and diligence" in preparing Heritage's financial statements and tax returns;

submitting Quarterly Call Reports; complying with regulatory reporting requirements; and "analyzing data used to prepare [Heritage's] financial statements, tax returns, and other reports . . . . " (*Id*. ¶ 89.) Faydash also had a duty to ensure the integrity of the data he used and to accurately present Heritage's financial condition to the Board of Directors. (*Id.*) Faydash allegedly breached those duties by failing to ensure that Heritage had sufficient ALLL reserves and capital to cushion against high-risk CRE loan losses. (*Id*. ¶ 90.) Faydash also improperly advised the Board of Directors to approve dividends to HCBI and permit incentive payments to senior management in lieu of increasing ALLL reserves. (*Id.*) These breaches, the FDIC asserts, caused Heritage to lose at least $11.075 million and render Faydash liable for gross negligence, negligence, and breach of his fiduciary duty. (*Id*. ¶ 91.)

Plaintiff's allegations are sufficient to meet the liberal notice pleading requirements and to set forth the duty, breach, causation, and damage elements of claims for gross negligence, negligence, and breach of fiduciary duty. Although there are no post-*Twombly* cases from this Circuit involving Heritage's fact pattern, the existing case law supports this conclusion. In *RTC v. O'Connell*, No. 94 C 4186, 1996 WL 153866, at *3 (N.D.Ill. Apr. 1, 1996), a claim for gross negligence, the complaint filed by the Resolution Trust Corporation (the FDIC's predecessor) survived a Rule 12(b)(6) motion by alleging, *inter alia*, that defendants failed to properly supervise a defunct savings and loan association's investment activities and failed to establish and enforce adequate procedures for making prudent loans. The defendants in *O'Connell* allegedly approved loans without obtaining credit reports, appraisals, or adequate collateral. The RTC asserted that these acts amounted to recklessness—presumably at least as serious misconduct as the gross negligence alleged here. The fact that those allegations survived a Rule 12(b)(6) challenge supports the conclusion that the complaint in this case is sufficient, as well. *See also RTC v. Fortunato*, No. 94 C 2090, 1994 WL 478616 (N.D. Ill. Sept. 1, 1994) (allegations that officers and directors failed to follow bank procedures or supervise investment activities are sufficient to state

a gross negligence claim); *RTC v. Franz*, 909 F. Supp. 1128, 1141-42 (N.D. Ill. 1995) (denying a Rule 12(b)(6) motion under the recklessness definition of gross negligence because the RTC alleged, *inter alia*, that the defendant bank officers and directors failed to heed regulatory criticisms); *RTC v. Platt*, No. 92-CV-277-WDS, 1992 WL 672942, at *6 (S.D. Ill. Oct. 23, 1992) (RTC adequately stated claims for negligence and breach of fiduciary duty by alleging that officers and directors lacked experience in complex commercial lending, failed to establish written loan policies, failed to supervise management with respect to loan policies, and failed to review or analyze financial, credit, or market information before approving commercial real estate loans).

Defendants Hetler, Jelinek, and Moseley argue that the FDIC's allegations are as consistent with innocent conduct as they are with gross negligence, negligence, and breach of fiduciary duty. (*See* Hetler, Jelinek, and Moseley Joint Br. at 4-8.) Although Defendants' activities might be interpreted favorably), the court is satisfied, at the pleading stage, that the conduct alleged here is at least as troubling as that which survived motions in these earlier cases. Nor is the court troubled by the FDIC's purported failure to say "how" or "why" the Defendants' conduct deviated from the applicable standard of care, or to attach Heritage's charter, by-laws, the minutes of board meetings, loan applications, or loan documents to the complaint. "'Specific facts are not necessary'" to meet notice pleading requirements. *Swanson*, 614 F.3d at 404 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). The level of detail Defendants appear to demand far exceeds the demands of Rule 8. Similarly, fact arguments, including Saphir's arguments regarding his interpretation of the Uniform Bank Performance Reports data and his contention that Heritage's ALLL reserves were sufficient in light of that data, are premature. (Saphir Br. at 3-4; 18-19.)

Defendants Anthony and Champion argue, as do the Loan Committee Defendants, that the complaint does not give them fair notice of the claims against them because it groups the Director Defendants together and does not include separate allegations against each individual Defendant. Defendants do not cite to any case law to support this argument, and the case law the court has

located expresses disapproval of "group pleading" in cases alleging fraud—not at issue here. Defendants do cite *RTC v. Blasdell*, 154 F.R.D. 675, 690 (D. Ariz. 1993), but the relevant language there involved an alleged violation of Rule 10(b), which is not at issue in the instant case. Nor does the court agree that the FDIC has alleged oversight failure or a breach of the Defendants' duty of loyalty, as Defendants Anthony and Champion contend. Whatever the standard may be for pleading claims under those theories, that standard does not require dismissal of the FDIC's duty of care claims in this case. Defendants' contention that Heritage's losses were the result of a bad economy and not their own actions ignores the fact that a proximate cause "need only be a substantial factor leading to the injury, not the sole factor." *Bierman*, 2 F.3d at 1434. Here, similarly to *Franz*, 909 F. Supp. at 1143, the FDIC has alleged that Defendants' actions were the proximate cause of Heritage's alleged losses.

Defendant Faydash argues that the allegations that ALLL reserves were insufficient does not support a claim of negligence because the FDIC has not alleged that Faydash *believed* the ALLL reserves were insufficient. In support of that argument, Faydash cites to *In re CIT Group Securities Litig.*, 349 F. Supp. 2d 685, 689 (S.D.N.Y. 2004), but that case alleged a false statement under the securities laws, not a negligence claim. Assuming that belief in the falsity of the statement is a required element for a securities claim, it is not required for claims of negligence or breach of fiduciary duty. *Gravee*, 966 F. Supp. at 636; *Lewis*, 561 F.3d at 702; *DeGeer*, 707 F. Supp. 2d at 795. Faydash's objection on this basis is overruled.

**E. Duplicative Claims**

Finally, most of the Defendants have moved to dismiss either the negligence or the breach of fiduciary duty claims against them as duplicative. Defendants are correct that courts have the authority to dismiss duplicative claims if they allege the same facts and the same injury. *Beringer v. Standard Parking O'Hare Joint Venture*, Nos. 07 C 5027, 07 C 5119, 2008 WL 4890501, at *5 (N.D. Ill. Nov. 12, 2008). The FDIC does not dispute that its negligence claims (Counts II, V, VIII)

and breach of fiduciary duty claims (Counts III, VI, IX) allege the same set of operative facts and injury. Instead, the FDIC contends that it was free to plead duplicative negligence and breach of fiduciary duty claims in the alternative under Rule 8(d)(2). Rule 8(d)(2) does permit alternative pleading, but requires the plaintiff to "use a formulation from which it can be reasonably inferred that" the plaintiff is indeed pleading in the alternative. *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011)(quoting *Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000)). The FDIC's complaint does not include any indication that the negligence and breach of fiduciary duty claims are alternative theories. Accordingly, the negligence claims, Counts II, V, and VIII of the complaint, are dismissed as duplicative of the breach of fiduciary duty claims.

## CONCLUSION

Defendant Saphir's motion to seal document [72] is denied. Defendant Fanning's motion to join Defendant Saphir's motion to dismiss [70] is granted. Defendant Faydash's motion to strike [87] is granted; his original motion to dismiss [65] is stricken. Defendants' motions to dismiss [57, 58, 61, 62, 75, 76, 81, 87] are granted in part and denied in part. The negligence claims, Counts II, V and VIII, are dismissed as duplicative of the breach of fiduciary duty claims, but the motion is otherwise denied. Defendants are directed to answer Counts I, III, IV, VI, VII and IX of the complaint within 21 days of the date of this order.

ENTER:

Dated: September 1, 2011

REBECCA R. PALLMEYER
United States District Judge